[No. 14944. In Bank. — July 20, 1893.]

## IN THE MATTER OF THE ESTATE OF HIRAM ARTHUR PEARSONS, DECEASED.

WILLS— CONSTRUCTION— REFERENCE TO CIRCUMSTANCES EXISTING AT DATE OF WILL. — Where a testator refers in his will to an actually existing state of things at the time of its execution, the language must be held to refer to the date of the will, and not to that of his death, and its provisions must be construed with reference to the circumstances by which he understood himself to be surrounded, and the conditions present to his mind when the will was written.

ID. — EXCEPTION IN DEVISE— PROPERTY HELD JOINTLY— LIFE CHARGE UPON INCOME. — A devise of all the interest of the testator in a block of land, excepting a portion thereof held jointly with his aunts, which in a previous provision of the will be had bequeathed to them, only conveys his interest in that portion of the block owned by him in severalty at the date of the will, and does not include his interest in a part of the block in the income of which his aunts were jointly interested with him during their lives, they having a life charge upon

the income of an undivided half thereof, though the aunts died prior to the death of the testator, there being a bequest over by him to charitable purposes of the property bequeathed to them in the event of their death before his own.

APPEAL from a judgment and order of the Superior Court of the City and County of San Francisco construing a will.

The facts are stated in the opinion of the court.

*Wilson & Wilson,* and *Lloyd & Wood,* for Appellant.

*Thos. F. Barry, I. N. Thorn, John B. Mhoon, A. H. Loughborough, G. W. Haight,* and *O.iver P. Evans,* for Respondents.

FITZGERALD, J.—This proceeding was brought by the executor of the last will and testament of Hiram Arthur Pearsons, deceased, to obtain a construction of the second and third clauses of that instrument.

The will is olographic, and was dated at San Francis⁀o, August 9, 1882. The testator died at Chicago, Illinois, July 7, 1889, at the age of twenty-eight years. He was the only child of Hiram Pearsons and Ann Charity Pearsons, who died prior to the execution of his will. He had no profession, was never married, and left surviving him uncles and aunts parties to this proceeding, but not named in the will, who claim as next of kin and heirs-at-law that part of his estate, as to which it is alleged he died intestate, by reason of the devise to charity exceeding the statutory limit.

The clauses referred to are as follows:—

"2. I do give, devise, and bequeath unto Betsey Frances Mathewson and Polly Barton, my aunts, all real property which I hold jointly with them; and I direct that in the event of the death of either Betsey Frances Mathewson or Polly Barton prior to that of my own, all property of whatever nature herein bequeathed to them shall revert and vest in the survivor, her heirs and assigns forever; and furthermore, in the event of the death of both Betsey Frances Mathewson and Polly Barton prior to my decease, the aforesaid property otherwise bequeathed to them shall be sold at public auction, to the highest cash bidder, the proceeds of said sale to be equally dis-

tributed among the different orphan asylums of the city and county of San Francisco; and said asylums I request to be designated by the judge of the probate court.

"3. I do give, devise, and bequeath unto Isabella Rogers Kinsey, wife of my former guardian, her heirs and assigns forever, all that property which is owned by me, bounded on the south by Clay Street; on the west by Drumm Street; on the north by Merchant Street; and on the east by East Street, excepting therefrom that portion thereof which I hold jointly with Betsey Frances Mathewson and Polly Barton, and which has hereinbefore been bequeathed to them."

It appears that the property thus devised had a frontage of 178 9-12 feet on Clay Street, running through the block with a uniform depth of 115 feet to Merchant Street, and was originally owned by Hiram Pearsons, the father of the testator, who in his lifetime granted by deed absolute to his son the westerly 68 9-12 feet of the 178 9-12 feet of the property in question. The remaining 110 feet thereof, including other property, he devised by will to his wife Ann Charity and his said son Hiram in equal undivided halves "share and share alike," and upon his death the title thereto was accordingly vested in them. Afterwards Ann Charity Pearsons died, leaving a last will and testament, by the first clause of which she devised to her son, Hiram Arthur Pearsons, "all the real and personal property which I own jointly with him"; and in a subsequent clause of her will she devises and bequeaths to her sisters, Betsey Frances Mathewson and Polly Barton, for their use during the term of their natural lives, certain real and personal property, and also "the income from all property which I own jointly with my son Hiram Arthur Pearsons" (which description includes the 110 feet in question) . . . . "and in case my son Hiram Arthur Pearsons shall die before the said Polly Barton and Betsey Frances Mathewson, or either of them, the above-mentioned property shall go to them or the survivor of them absolutely, share and share alike, to them or her heirs and assigns forever."

The undivided one-half interest in the said 110 feet lot owned by Ann Charity Pearsons at the time of her death was afterwards distributed in accordance with these provisions of her will to her son Hiram Arthur Pearsons, "subject only to the

rights, interests, and uses hereinbefore mentioned, to Polly Barton and Betsey Frances Mathewson or to the survivor of them."

Such was the condition of the title of this property on the ninth day of August, 1892, when the will was written.

The testator survived his said aunts Polly Barton and Betsey Frances Mathewson, if that be material, and the fee of the whole of this property was vested in him at the time of his death.

The judgment and order construing the foregoing provisions of the will of Hiram Arthur Pearsons, deceased, substantially adjudges that by the terms thereof there is devised to Isabella Rogers Kinsey the westerly 68 9–12 feet of the 178 9–12 feet of the property in question and no more. From which judgment and order this appeal is taken by Isabella Rogers Kinsey alone.

There is but one question to be determined on this appeal, and that is whether it was the intention of the testator to devise to Mrs. Kinsey the whole of his interest in the block bounded by Clay, Drumm, Merchant, and East Streets, or whether he intended to devise to her only a part thereof and the remaining portion to his aunts.

He held title to the westerly 68 9–12 feet of the 178 9–12 feet of property in the block by deed from his father; and to one undivided one-half interest in the remaining 110 feet thereof under the will of his father; and to his mother's undivided one-half interest thereof under her will, "subject only to the rights, interests, and uses hereinbefore reserved to Polly Barton and Betsey Frances Mathewson or the survivor of them." This reservation refers to the income devised to the aunts from the undivided half of the property devised by her to the testator, of which the 110 feet referred to was a part.

By the second clause of his will he devises to his aunts "all the real property which I hold jointly with them"; and by the third clause thereof he devises to Mrs. Kinsey "all that property which is owned by me in the block," bounded as therein described, "excepting therefrom that portion thereof which I hold jointly with Betsey Frances Mathewson and Polly Barton, and which has hereinbefore been bequeathed to them."

The language used by the testator in his will must be held to refer to the date thereof, and not to that of his death, for the reason that he refers therein "to an actually existing state of things." Such being the case, it is a familiar rule in the interpretation of such a will to construe its provisions with reference to the circumstances by which he was or understood himself to be surrounded, and the conditions present to his mind at the time the will was written.

The general words of description used by him in the third clause of his will, by which he devises to Mrs. Kinsey all of his interest in the block, are qualified and limited by his expressly excepting therefrom in the sentence immediately following such description "that portion thereof which I hold jointly with Betsey Frances Mathewson and Polly Barton, and which has hereinbefore been bequeathed to them." This language plainly shows that he did not intend to devise to Mrs. Kinsey the whole of his interest in the block, but only a specific part thereof, and the circumstances and conditions referred to manifestly show that the part that he did intend to devise to her was the westerly 68 9–12 feet thereof, which he acquired by deed from his father, and was thereafter owned by him in severalty.

The title to the 178 9–12 feet was acquired by him at different times and in various ways. The 110 feet he had held jointly with his mother by virtue of the provisions of his father's will, and the income from her undivided half interest therein had been devised by her to his aunts, and was thereby made a charge upon the property during the term of their natural lives, and in the event of his aunts or either of them surviving him, then they or the survivor of them would take the fee. He was, therefore, jointly interested with his aunts in the income derived from the 110 feet.

He was but twenty-one years of age when the will was written, and not a lawyer, consequently not accustomed to or versed in the use of technical terms, therefore not likely to employ words having a technical meaning, but to use words in their ordinary and popular sense, for the purpose of expressing his wishes and intentions. What, then, could be more reasonable or natural for him under such circum-

stances than to refer to the 110 feet in question as property which he held jointly with his aunts. It was in that way that he had held it with his mother, and his aunts under her will had succeeded not as joint owners in the fee, but to a joint interest with him in the income arising therefrom; and as a further illustration in support of this view, it is evident from his language that he understood that he held the whole of the property in the block under different conditions, and acting upon this understanding he makes a significant distinction between holding and owning. To his aunts he divises "all real property which I *hold jointly* with them"; to Mrs. Kinsey he devises all that property which is *owned by me* in the block bounded as described, "excepting therefrom that portion thereof which I *hold jointly* with Betsey Frances Mathewson and Polly Barton, and which has hereinbefore been bequeathed to them."

It would indeed be a strained and unnatural construction, and one totally at variance with the intentions of the testator, as plainly expressed by the foregoing language of his will, to hold that he intended by the third clause thereof to devise to Mrs. Kinsey all of his interest in the block therein described. But it is claimed that, as the aunts died before the testator, they could not have held jointly with him at the time of his death, and that it therefore follows that Mrs. Kinsey takes all the property owned by him at the time of his death, because there was no person living and nothing to which the said exception was applicable.

It was manifestly his intention to exclude from the Kinsey devise the 110 feet in question. He survived his aunts who were the residuary legatees and devisees under his will, having died one week after the death of the surviving aunt; but he had provided for just such a failure of the devise to his aunts by directing that, in the event of their death before his own, the property devised to them should be sold at public auction to the highest bidder, and the proceeds of such sale be equally distributed among the different orphan asylums of the city and county of San Francisco.

The devise to Mrs. Kinsey is a specific devise, and was clearly intended to operate on the 68 9–12 feet referred to and no more; and that the testator manifestly intended to and did

except from the devise the 110 feet in question, which by clause two he had devised to his aunts.

From these views it necessarily follows that the judgment and order of the court below should be affirmed, and it is so ordered.

McFARLAND, J., GAROUTTE, J., PATERSON, J., and DE HAVEN, J., concurred.