**106 P.2d 847**

**In re ROEDER'S ESTATE.**

**No. 4543.**

Supreme Court of New Mexico.

Sept. 17, 1940.

Rodey & Dickason, of Albuquerque, for appellants.

Reid & Iden, of Albuquerque, for appellees Honaker, Sanchez & Iden.

T. E. Mears, of Portales, and D. A. Macpherson, Jr., of Albuquerque, for appellee Cissell.

Coors & Adams, of Albuquerque, for appellees and cross-appellants Hudgins.

SADLER, Justice.

This appeal is to review the judgment entered after a second hearing in the same probate proceeding pending in the district court of Bernalillo County on the estate of H. B. Roeder, deceased, wherein two separate instruments have been offered for probate as the last will and testament of said decedent. The separate instruments will be referred to as the First Offered Will and the Second Offered Will. See In re Roeder's Estate, 44 N.M. 429, 103 P.2d 631, for our opinion on the first appeal in which we affirmed the judgment of the district court in denying probate to the First Offered Will.

Some confusion may be avoided if it is stated at the outset that the First Offered Will represents the second attempted disposition of his property by the testator and the Second Offered Will constitutes his first effort in that behalf. So that when we mention the First Offered Will we refer to the later writing in the order of its attempted execution and, likewise, reference to the Second Offered Will contemplates the first of the two writings claimed to have been executed by the testator as his last will and testament.

The testator died in February, 1938. After his death there was found in his safety deposit box in a bank a three page document purporting to be his last will and testament. Its first page contained all dispositive provisions and the second and third pages thereof contained respectively the appointment of an executor and the attestation, the latter dated July 7, 1937. The three pages were bound together by three wire staples which pierced the pages. Upon examination, it appeared that the second and third pages at one time had been stapled together separately and with some other first page.

The disposition of the property contained in the First Offered Will, after certain directions concerning burial and for payment of funeral expenses and debts, was as follows:

| Beneficiary | Bequest or Devise |
| --- | --- |
| 1. Mary K. Cissell | 100 shares of best stock |
| 2. Jessie E. Thompson | Residence and furnishings, accident policies, 100 shares of best stock, diamonds |
| 3. Robert E. Honaker | $1000, all guns and a watch |
| 4. Fidel Sanchez | $1000, and all clothing |
| 5. Mary E. Roeder | ⅓ of residue |
| 6. William G. Hudgins | ⅓ of residue |
| 7. James D. Hudgins | ⅓ of residue |

It may be mentioned that of these beneficiaries, only Mary E. Roeder, a niece of testator, was related to him.

There was also found among the testator's effects at his home, a sealed envelope, marked in his own handwriting as containing a copy of his will, which contained a carbon copy of the First Offered Will. This, like its original, showed autoptic evidence of a substitution of first pages. Inclosed in the same envelope, and clipped to this document at the back with an ordinary, nonpiercing paper clip, and bearing staple perforations and other obvious indications that it was formerly the first page of the carbon copy with which it was inclosed, was a page of carbon copy typing. This page, upon examination, appeared to contain a complete disposition of the testator's property. This disposition, after directions concerning burial and for payment of funeral expenses and debts, was as follows:

| Beneficiary | Bequest or Devise |
| --- | --- |
| 1. Mary K. Cissell | 100 shares of best stock |
| 2. Robert E. Honaker | Residence and furnishings, all guns and a watch |
| 3. Alma Norton | $1000 and all diamonds |
| 4. Fidel Sanchez | $1000 and all clothing |
| 5. William G. Hudgins | ¼ of residue |
| 6. James D. Hudgins | ¼ of residue |
| 7. Robert L. Cooper, Jr. | ¼ of residue |
| 8. Richard C. Cooper | ¼ of residue |

The hearing out of which the judgment under review arose was one to probate as the last will and testament of the testator and as a single document, complete unto itself, this dispositive page and the second and third pages of the First Offered Will. The latter will, involved on the first appeal to this court, had been presented to the probate court and admitted to probate over objections by the heirs at law. On appeal to the district court pursuant to 1929 Comp., § 34-421, it was refused probate after a trial de novo, and we affirmed the judgment of the district court upon an appeal brought here as above stated.

In the meantime, the administration proceedings continued on remand to the probate court following the district court's judgment denying probate to the First Offered Will. The heirs at law petitioned for the appointment of E. C. Iden, who had been named as executor in both purported wills, as administrator and an order so appointing him was entered. Thereafter, the executor and certain beneficiaries presented a petition to probate the Second Offered Will. The heirs at law filed a protest on the grounds of nonexecution and revocation. Upon motion of certain bene-

ficiaries under the First Offered Will, an order of continuance was entered by the probate court pending decision in the supreme court of the appeal from the decree denying probate to the First Offered Will. Thereupon, and pursuant to 1929 Comp., §§ 34-422 and 34-423, the entire proceeding on the estate of testator was removed to the district court upon a petition filed by the heirs at law. The order of continuance theretofore entered by the probate court was vacated by the district court and the trial before the district court was had upon the petition to probate the Second Offered Will and upon the objections filed to such probate. It is from the judgment admitting this Second Offered Will to probate that this appeal is prosecuted.

At the trial the parties entered into a stipulation that any party might introduce all or any part of the evidence received in the former trial upon the petition to probate the First Offered Will as shown by the transcript of record of the official court reporter, to the same extent and effect as if the witnesses were personally again present and testifying, subject, of course, to the right of any party to produce any other evidence he might desire and subject to all objections which could be made were the witnesses present and testifying in person. And in connection with the present appeal, the parties stipulated that the bill of exceptions in the former cause, having been introduced in evidence in its entirety at the trial of the present cause,

should not be recopied into the bill of exceptions but that reference might be made to it in the transcript on the former appeal to the same extent as if the same were physically incorporated into the bill of exceptions for the present appeal.

At the conclusion of the trial, the court made the following findings of fact and conclusions of law, to-wit:

"1. On July 7, 1937, H. B. Roeder, in accordance with the law, executed a document as his last will and testament, and the execution of said instrument was properly attested, as required by law.

"2. The document executed by H. B. Roeder on July 7, 1937, as his last will and testament, consisted of three pages; that pages two and three of Exhibit A are the original pages two and three of said document, and that Exhibit A-1 is a carbon copy of the original page one of said document.

"3. Subsequent to July 7, 1937, and about the month of December, 1937, H. B. Roeder removed the original page one of the document which he executed on July 7, 1937, as his last will and testament, and substituted, for the original page one, the sheet of paper which now constitutes page one of Exhibit A; and, at the time H. B. Roeder substituted the new page one in the document which he had executed on July 7, 1937, the said H. B. Roeder in some manner destroyed the original page one of said document.

"4. At the time H. B. Roeder substituted a new page in the document which

he had executed July 7, 1937, as his last will and testament, said H. B. Roeder intended to make changes in his original will, which said intended changes are shown by a comparison of page one of Exhibit A with Exhibit A-1.

"5. At the time H. B. Roeder substituted a new page one in the document which he had executed on July 7, 1937, as his last will and testament, said H. B. Roeder did not at the time of such substitution, have the intention of revoking the document which he had executed on July 7, 1937, as his last will and testament.

"6. On July 7, 1937, H. B. Roeder was of sound mind and memory and fully competent to dispose of his property by a last will and testament.

"From the above and foregoing Findings of Fact the Court concludes as a matter of law:

"That Exhibit A-1 is a true and correct copy of page one of the last will and testament of H. B. Roeder, deceased, and that pages two and three of Exhibit A constitute the true and original pages two and three of the last will and testament of H. B. Roeder, deceased, and that Exhibit A-1, and pages two and three of Exhibit A are entitled to admission to probate, as the last will and testament of H. B. Roeder, deceased."

The appellants by appropriate action in the trial court reserved for review the grounds here relied upon for reversal, the first of which is that the evidence was insufficient to establish the will probated as identical with the one executed on July 7, 1937. In view of the fact that the original page one of the will as executed was lost or destroyed and contained all its dispositive provisions, the trial court apparently took the position that proof of its contents should be by clear and convincing evidence. But having so appraised the evidence adduced in support of the will, it found the facts as above set forth. If we agree with the trial court that the evidence was clear and convincing, it will be unnecessary to consider at all appellees' argument that this is not a case of proving a lost or destroyed will.

It is impossible to discuss the evidence intelligently without identifying and remembering the important exhibits in the case. Bearing in mind that the contestants are appellants here and contestees are the appellees, the exhibits to be discussed, bearing the designations given them in the other trial, are as follows:

Contestees' Exhibit "A" is the will found in the safety deposit box after testator's death, being the purported will denied probate in the proceeding reviewed on the former appeal.

Contestants' Exhibit "A-1" is the carbon copy of what the trial court found both in the former case and in this one is a carbon copy of page 1 of the testator's will as originally executed.

Contestants' Exhibit "A-2" is a carbon copy of Contestees' Exhibit "A" described first above.

We agree with the trial court that the evidence was strong that the will probated was the will executed by testator on July 7, 1937. Contestants' Exhibit "A–1" had endorsed on its face the word "copy" in testator's own handwriting. It came from the custody of testator with a full and satisfactory explanation of the circumstances under which it was discovered. It was found along with what is agreed to be a carbon copy of Contestees' Exhibit "A", taken from testator's safety deposit box. From an examination of the perforation holes at the top of Contestants' Exhibit "A–1", and the perforations at the top of the second and third pages of Contestants' Exhibit "A–2", the inference is inescapable that that page, Contestants' Exhibit "A–1", was formerly the first page of Contestants' Exhibit "A–2". The proof is very convincing, not only as to the holes that fit into each other perfectly, but also as to the creases at the ends of the clip which likewise do so.

These observations on the strength of the physical facts set forth in the preceding paragraph are almost verbatim the argument of counsel for contestants at the former hearing (appellants and contestants here) when urging the introduction in evidence of Contestants' Exhibit "A–1". Counsel for contestees (appellees) contend that by reason of the position then taken by appellants, they are now estopped to urge in this case the insufficiency of this evidence. Commenting upon the force of this evidence and the claimed inconsistency in appellants' position in the other trial and here, counsel for appellees say:

"A careful examination and study of the physical appearance of the original exhibits, particularly the carbon copy, will convince any one beyond any question as to what took place with reference to the Will of Henry Roeder. As was observed by the Trial Court it is just as clear as if he had seen him do it. The staple or perforation marks on Contestants' Exhibits 'A–1' and 'A–2' clearly show that pages two and three had at a time prior to having page one of Exhibit 'A–2' stapled to it, been stapled and fastened together with Contestants' Exhibits 'A–1'. No other conclusion can be reached but that page one was thereafter substituted, i. e., page one of Contestants' Exhibit 'A–2' was substituted for Contestants' Exhibit 'A–1'. No possible evidence could be imagined which could destroy or weaken the conclusion which must be reached from these physical facts, and no other evidence is necessary to strengthen or corroborate that physical evidence.

"Furthermore, no one has questioned or can question but that Contestants' Exhibit 'A–2' is an exact carbon copy of Contestees' Exhibit 'A'. This being true, this carbon copy rises to the same degree of evidence as the original, so far as its probative force as to what took place and the inferences to be drawn are concerned. This fact being established the effect of conditions surrounding the copy is the same as if those conditions concerned the original found in the safety deposit box. In other words,

had the original of Contestants' Exhibit 'A–1' been clipped to Contestees' Exhibit 'A' and so found in the safety deposit box, together with all of the physical facts as to stapling, etc. applying to the original as were found with the copies, there would be no difficulty in determining what took place. As to the Will first filed Appellants' whole case was based upon these physical facts, open and obvious to all and convincing beyond any doubt, and we submit Appellants should not now be heard to say that such evidence is not sufficient. No evidence in our opinion could be stronger."

While agreeing in the main with this argument on the facts thus presented by counsel for appellees, we do not agree with them that appellants are estopped to question the sufficiency of the evidence to establish that the will probated was identical with the one executed by testator on July 7, 1937. Nevertheless, we do think appellants' counsel at the first trial made a very fair and at the same time a very convincing statement of the force of the physical facts, readily observable upon an inspection of the exhibits in question. These physical facts, considered in the light of the surrounding circumstances, left no other reasonable inference to be drawn by the trial court than that the original page 1 of the will as executed on July 7, 1937, was the identical page which in the same typing produced the carbon copy, Contestants' Exhibit "A–1", found clipped to Contestees' Exhibit "A" among testator's personal effects in a sealed envelope endorsed on the back in his handwriting and over his own

signature "Copy of Will". The challenge to the sufficiency of the evidence in the respect indicated must be denied.

We come next to a consideration of the doctrine of dependent relative revocation, perhaps more easily and readily understood if we think of it as provisional or conditional revocation. This doctrine was applied by the trial court and resulted in the probate as testator's last will and testament of the Second Offered Will, being the first will in point of time as originally executed by him and as subscribed by his attesting witnesses. The appellants do not question that the doctrine prevails in New Mexico. They say: "This doctrine is well established in the common law. The appellants do not dispute that it forms a part of the law of New Mexico, although no case involving its application has been decided by our court". Their sole complaint lies in the contention that a case for application of the doctrine was not made out by the appellees. Hence, both sides agreeing, we may properly assume recognition of the doctrine in our law relating to wills.

Our statute concerning revocation of wills, 1929 Comp., § 154-109, provides for revocation by an instrument in writing executed and attested as in the making of a will, which distinctly refers to the former will and revokes it; or, by the making of a subsequent will disposing of the same property. The appellees argue that a will may be revoked only as provided by this statute. We have held that a will may be revoked by operation of law in other ways

than those specified in the statute. Teopfer v. Kaeufer, 12 N.M. 372, 78 P. 53, 67 L.R.A. 315. See, also, Brown v. Heller, 30 N.M. 1, 227 P. 594. But, in view of the conclusion we have reached, it is unnecessary to consider this question.

Just what, then, is the doctrine of dependent relative revocation? It is well stated in 1 Jarman on Wills (5th Ed., Bigelow) 166, as follows: "And here it may be observed, that, where the act of cancellation or destruction is connected with the making of another will, so as fairly to raise the inference, that the testator meant the revocation of the old to depend upon the efficacy of the new disposition, such will be the legal effect of the transaction; and therefore, if the will intended to be substituted is inoperative from defect of attestation, or any other cause, the revocation fails also, and the original will remains in force."

In an extensive annotation of the subject: "Effect of testator's attempted physical alteration of will after execution", appearing in 62 A.L.R. 1367, 1401, supplemented in 115 A.L.R. 710, 721, will be found the sub-topic, "Doctrine of dependent relative revocation" where many cases are cited and reviewed in which the doctrine has been applied. Except to mention later a few of such cases, we merely refer to these helpful annotations for an exhaustive list of the decisions. Stating the doctrine in 62 A.L.R. at page 1401, the author of the annotation says: "When a will, or portions thereof, are canceled or mutilated in order to change the will in whole or in part, and the attempt fails for want of due authentication, or other cause, this effort to revoke in whole or in part will be treated as relative and dependent upon the efficacy of the new disposition intended to be substituted; and hence, if the attempted disposition is inoperative, the revocation fails also, and the original will remains in force. This rule is styled the doctrine of dependent relative revocation. It is based upon the presumption that the testator performed the act of revocation with a view and for the purpose of making some other disposition of his property in place of that which was canceled, and that there is, therefore, no reason to suppose that he would have made the change if he had been aware that it would have been wholly futile, but that his wishes with regard to his property, as expressed in his original will, would have remained unchanged, in the absence of any known and sufficient reason for changing them." See, also, 28 R.C.L. 182, § 141, under topic "Wills" and 25 Harvard Law Review 337.

"The doctrine applies where only a portion of a will is canceled or erased by the testator with a view and for the purpose of substituting some other disposition of his property in place of that which is canceled or erased. When a testator attempts to alter his will by striking out certain clauses, making bequests to certain persons, and interlining bequests in favor of others, and the new or interlined bequest is not effective, the will is not revoked as to the bequest so stricken out or erased, be-

cause it is fairly inferable that he meant the revocation of it to be dependent on the taking effect of the interlineation." 28 R.C. L. 183.

It is thus to be observed from the statements of the doctrine we have quoted that the intent with which the testator cancels, obliterates, interlines or destroys all or any part of the prior will has a controlling effect in determining whether he accomplished an absolute revocation. For as said in Jarman, supra, "if the act of destruction is connected with the making of another will, so as fairly to raise the inference that the testator meant the revocation of the old to depend upon the efficacy of the new disposition intended to be substituted", then such will be the legal effect given the transaction by the courts.

And upon this vital question of intent, i. e., whether there was present with the testator at the time an animus revocandi, the appellants are faced with the finding of the trial court, as follows: "5. At the time H. B. Roeder substituted a new page one in the document which he had executed on July 7, 1937, as his last will and testament, said H. B. Roeder did not at the time of such substitution, have the intention of revoking the document which he had executed on July 7, 1937, as his last will and testament."

Unless the appellants somehow can escape the deadly effect of this finding, their opposition to probate of the will must fail. Primarily, they seek to avoid it by challenging sufficiency of the evidence to support the finding. We are disposed to agree with the trial court that sufficient evidence of intent to *change* rather than *revoke* the original will appears from the documentary evidence itself—a mere comparison of the two dispositive pages. The considerations present inducing his finding are persuasively stated in the trial judge's opinion. He said:

"The second legal ground urged by the proponents appears to be sound. The Court is of the opinion that this is a proper case for the application of the doctrine of dependent relative revocation. It is true that the deceased, by substituting a new first page in his will, excluded from his list of beneficiaries Alma Norton and the two Cooper children; but most of those who were in the mind of the testator as beneficiaries on July 7, 1937, were still in his mind as beneficiaries when he made the substitution of page one. Mary K. Cissel would receive the same bequest under both documents; Fidel Sanchez would receive the same bequest under both documents; Robert E. Honaker would receive less by the substitution, but nevertheless, is a beneficiary under both documents; the two Hudgins children are still beneficiaries of a part of the residuary estate under both documents; in short, a comparison of the original page one and the substituted page one indicates clearly an intention to *change* the will rather than to revoke the document, and these changes consist principally in the elimination of Alma Norton and the Cooper children, and in the substitution of Jessie E. Thompson and a niece, Mary Eliz-

abeth Roeder, as beneficiaries. It seems clear from an examination of the documentary evidence that the testator removed and in some manner destroyed page one of the original document solely for the purpose of making changes in the document. This conclusion finds strong support in the fact that the deceased in each document, disposed of the same items; and, in some instances the disposition was to the identical beneficiaries, without change.

"The Court admitted in evidence considerable testimony on both sides as to the friendly or unfriendly feelings of the deceased toward various beneficiaries and towards the two brothers and sister of the deceased. The Court has disregarded this testimony in deciding this case for the reason that, in the opinion of the Court, the true intention of the testator is clearly shown in the documentary evidence before the Court."

The cases are many in which, by making changes in pencil or by pen and ink interlineations on a page of the original will, but without re-execution and a new attestation, the testator has sought ineffectively to change bequests or testamentary provisions. The doctrine of conditional revocation has been applied and the will probated as originally executed. Thomas v. Thomas, 76 Minn. 237, 79 N.W. 104, 77 Am.St.Rep. 639; In re Marvin's Will, 172 Wis. 457, 179 N.W. 508; Hesterberg v. Clark, 166 Ill. 241, 46 N.E. 734, 57 Am.St.Rep. 135; Cummings v. Nichols, 53 Ohio App. 520, 5 N.E. 2d 923; Stover v. Kendall, 1 Cold., Tenn.,

557; Gardiner v. Gardiner, 65 N.H. 230, 19 A. 651, 8 L.R.A. 383.

Appellees aptly suggest that if the changes here sought to be made by testator had been attempted by striking out written lines on page one of the will as executed and interlining the substitutions, under an abundance of authority in the reported cases, the doctrine of conditional revocation would be applied, if the proof were clear as to contents of the will as originally written. Under such circumstances appellants, recognizing the doctrine as in force in New Mexico, as they do, would scarcely contend that a change or revocation of the will as originally written was accomplished. But the situation is not materially different under the trial court's findings of what transpired.

Varnon v. Varnon, 67 Mo.App. 534, is a case very much like the one before us. The testator desired to make a certain change in his will providing that upon the death, without children, of his widow and son, who took the entire estate with right of survivorship, the estate should go to testator's brother and sister in equal shares. The change desired was to have the whole estate go to his brother alone upon the contingency named. The testator attempted to accomplish the change by rewriting the page on which the provision appeared, simply omitting the sister's name, and substituting the new page for the old page. The trial court, acting under a statute permitting partial revocation, probated all of the will except the substituted page. The ques-

tion was upon the right to have the will probated as originally written, since a certain provision materially affecting the wife's rights but unchanged under either writing appeared on the page in question. The court, applying the doctrine of dependent relative revocation, ordered the cause reversed "with directions that the trial court enter judgment establishing the will as written before the attempted alteration". The court said: "In the case at bar the substituted page was noneffective, since the will, as changed, was not reexecuted or witnessed in any way known to the law. And it is quite apparent to us that the testator only intended the revocation of the fifth page, to be accomplished by a substitution of another page with identical provisions except to omit the name of his sister. The face of the will itself demonstrates this. At the bottom of page 4 was the provision that in case of the wife's death all the property should go to the son, and at the top of page 5 was the provision that in case of the son's death all should go to the wife. Although this latter provision was on page 5, the testator had no design or intent to omit it from the will. He only intended, as just stated, to omit the name of his sister, so that she might not, in the contingency of the wife and son dying without children, become a beneficiary of the estate. In other words, he only intended to revoke page 5 by the immediate substitution of another page with the change indicated. His intention to revoke depended upon, and was intended to be made by, the substituted paper. If that was noneffective,

then no revocation was had. The result is that page 5 as first written is unrevoked and remains a part of the will. The fact that the page has been destroyed does not prevent its contents from being established by competent evidence. Jackson v. Jackson, 4 Mo. [210], 211; Dickey v. Malechi, 6 Mo. [177] 183 [34 Am.Dec. 130]; Schouler on Wills, sec. 385."

It is urged by appellants that there is an entire absence of evidence that the removal of the original and substitution of rewritten page one took place as a part of the same transaction. The evidence is persuasive that it did so occur. It is apparent from the record that the testator who was a man of some business experience prepared his own will, even to the typing thereof. When presented to his attorney for attestation it was already typed and ready for the necessary signatures. True, the original first page was never found but the carbon copy thereof was found in the same sealed envelope with a carbon copy of the will as changed, endorsed in testator's handwriting "Copy of Will" over his genuine signature. In Strong's Appeal, 79 Conn. 123, 63 A. 1089, 1090, 6 L.R.A.,N. S., 1107 and case note, 118 Am.St.Rep. 138, the same contention to defeat probate of the original will apparently was made and rejected. The court said: "The expression of the motive for the act of cancellation must govern the result of the act of tearing the will. The will and draft will having been found in the same envelope. It is evident that whatever Miss Strong did constituted one transaction proceeding

from the same intent and actuated by the same cause. It is found by the superior court that the will signed in 1897, was executed in all respects according to law, and that Miss Strong was then of full age and sound mind and memory. It should, therefore, have been admitted to probate."

Error is assigned upon the trial court's refusal to adopt appellants' requested conclusion of law, reading: "The fact that the testator attempted to execute a second and different will which was ineffectual for lack of proper execution does not require the application of the doctrine of dependent relative revocation."

We see no error in view of our conclusion that the trial court made no misapplication of the doctrine of dependent relative revocation, thus evidencing a clear grasp of the controlling considerations governing the question.

The appellants' counsel have presented able and forceful arguments in support of the positions assumed. In the main, however, the arguments are predicated upon the assumption that in removing and destroying original page one, the testator unconditionally revoked his will, a fact found against them by the trial court, upon evidence which we deem substantial.

The conclusion reached renders it unnecessary to pass upon the cross-appeal prosecuted by certain of the appellees. For the reasons given the judgment of the trial court will be affirmed and it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and MABRY, JJ., concur.