[L. A. No. 18917.   In Bank.   Feb. 7, 1945.]

Estate of SAMUEL B. KAUFMAN, Deceased.   SECOND CHURCH OF CHRIST, SCIENTIST, OF NEW YORK CITY, Appellant, v. HENRY KAUFMAN et al., Respondents.

Lindstrom & Bartlett and Ralph G. Lindstrom for Appellant.

Gaines Hon for Respondents.

TRAYNOR, J.—On March 18, 1940, Samuel B. Kaufman executed a will in New York. He subsequently moved to California where he executed a new will on April 30, 1941, containing the clause "I, Samuel B. Kaufman, do hereby make and declare this to be my Last Will and Testament, revoking all former wills." Both wills named identical persons for identical cash bequests and the Second Church of Christ, Scientist, of New York City, as residuary legatee. The 1941 will named a new executor. It also directed that the testator's body be cremated; the 1940 will only stated a wish to that effect. It expressly provided, as the 1940 will did not, that the specific legacies were given free of deduction for inheritance or estate taxes. It made no express provision, as the 1940 will did, that "In the event there is not sufficient amount in my estate to pay the above bequests, I direct my executor to divide the proceeds in the proportion as stated above." The testator died on May 2, 1941. On petition of one of the executors, the 1941 will was admitted to probate. Appellant thereafter filed a petition to have the 1940 will admitted to probate, to which respondent filed a contest. The present appeal is taken from the judgment denying the 1940 will admission to probate.

The respondent contends that there is substantial evidence to support the finding of the trial court that it was the intention of the testator in executing the 1941 will to revoke the 1940 will unconditionally. The appellant contends that the 1940 will should be admitted to probate under the doctrine of dependent relative revocation, on the ground that the testator did not intend to destroy the testamentary effect of the 1940 will unless the 1941 will would become wholly effective.

Before executing the 1941 will, the testator consulted Mr. J. C. Seaman, assistant trust officer of the California Trust Company, with regard to the company's becoming the executor of his will. Mr. Seaman testified that after reading the testator's 1940 will "I asked him who he wanted to leave his property to or if he had any special wish that he wanted carried out and he said no, that he was perfectly satisfied with the testamentary disposition made by it, made by that Will; he did not want to make any change. The only question that was bothering him was whether his friend and attorney, a Mr. Franklin, would want to come out here to qualify in the event of his death. He rather thought that Mr. Franklin was a busy man and would not want to come

and he had received a favorable report about our company through his relations with the Bank, our parent company, and that if Mr. Franklin did not want to act, that he would like to have our company. So, at that point I told him there was nothing I could do for him, that he better go and see a lawyer and have a new will drawn or have a codicil drawn and to tell the lawyer his story, to seek proper advice. That he declined to do. He said he did not want to go and see a lawyer; he could not see why I could not fix it up for him. I told him that I could not do that, that he would have to seek legal advice on his problem. After that, why he said—— he went to another desk that was not in the office and picked up a pen and he said, 'I will just write the name of California Trust Company in here and initial it', and I said, 'I don't think you should do that. You better go and see a lawyer and get proper advice on that.' In addition to that we talked about the fees in California and about his coming to California, and so forth, and at that point he left and went downstairs and later he came back either once or twice—— I don't recall—— and he said on the last occasion that he thought he would go and see a lawyer, but he did not know any; that he was a stranger out here and at that point he asked me if I would recommend someone, which I did, as I previously related." The testator thereafter consulted Mr. Moe M. Fogel, an attorney recommended by Mr. Seaman, who testified; "This Will (indicating) partly printed and partly written, is the one he showed me, the 1940 Will. I asked him what his purpose was, what he wanted, and he said he wanted a new Will to be just like the old one excepting that he wanted to have a California Executor. I examined this Will and then asked him to wait a moment while I examined the Code. I examined the Code and found from the Code that if he executed this Will in exactly the same terms and revoked the other Will, then he would have to live a certain length of time, 30 days, in order to make it effective, and I said to him, 'if I were you, I would draw a Codicil to this Will because should you die within 30 days it would not be effective.' He said, 'No, I want a new Will. I don't want a Codicil,' and I drew the Will of 1941. There was one other thing which I inquired into in the meantime. I called Mr. Bruce Taft's office in his presence and asked him if the Church was properly designated in the old Will and found that it was, and I carried it into that Will. I then read the Will to him. I read from a copy and he had

the original in front of him in the presence of Mrs. Nadine Simkins, my secretary. I asked him if this was his Last Will and Testament and he said yes, and I asked him, 'Do you wish Mrs. Simkins and I to act as witnesses?' And he said yes, and he executed this Will in our presence and we executed it in his presence . . . and in the presence of each other . . . I gave him the original of the 1941 Will and a carbon copy of the 1941 Will, I gave him back the original Will of 1940 and he left the office. . . . In about an hour or less he came back to my office and said that he was distressed at having taken'' Charles Franklin's name ''off as executor—— he felt that Mr. Franklin might have his feelings hurt by that having been done and that Mr. Franklin who had been a man who had performed so many services for Mr. Kaufman and that he would not want him to feel that way about it and I said he could be put back on as an Executor if he wanted to come out here, he could come and he said that he was sure he would not want to come but he did want to have him on there so he would feel that he had been mentioned. So we then drew the Codicil of 1941, the Codicil to the 1941 Will and he declared it to be his Last Will and Testament in due form and we executed it, and I believe it has been admitted to probate already.'' Mr. Fogel recalled writing on the 1940 will ''revoked by reason of change of residence and difficulty to come to California and qualify.'' These words had been partially erased. The word ''Cancelled'' was written on the 1940 will, but Mr. Fogel did not know who wrote it or when it was written. Mr. Fogel further testified that he told decedent he should keep the 1940 will after making the 1941 will. On redirect examination he reiterated that he had told decedent that he would have to live thirty days to make the residual bequest good, and, on recross-examination, stated that he did not point out to decedent any other methods by which he could safeguard the original will. Mrs. Nadine A. Simkins, Mr. Fogel's secretary, corroborated Mr. Fogel's testimony that his first suggestion to decedent was that he make a codicil to the will because that was the simplest way to do it, and that decedent replied that ''He was not making any particular changes in the will except that he should take out his executor.'' Mrs. Simkins saw Mr. Fogel examine the code and heard the conversation between him and the testator substantially as Mr. Fogel related it.

Under the doctrine of dependent relative revocation,

an earlier will, revoked only to give effect to a later one on the supposition that the later one will become effective, remains in effect to the extent that the latter proves ineffective. (*Estate of Marx*, 174 Cal. 762, 766-767 [164 P. 640, L.R.A. 1917F 234]; *Blackford* v. *Anderson*, 226 Iowa 1138, 1150-1151, 1175-1176 [286 N.W. 735]; *Charleston Library Soc.* v. *Citizens & So. Nat. Bk.*, 200 S.C. 96, 125, 126 [20 S.E.2d 623]; *Strong's Appeal*, 79 Conn. 123, 125-126 [63 A. 1089, 118 Am.St.Rep. 138, 6 L.R.A.N.S. 1107]; *Wilbourn* v. *Shell*, 59 Miss. 205, 209 [42 Am.Rep. 363]; *In re Roeder's Estate*, 44 N.M. 578, 589 [106 P.2d 847]; *Stewart* v. *Johnson*, 142 Fla. 425, 429-430 [194 So. 869]; *In re Smalley*, 131 N.J.Eq. 175, 178 [24 A.2d 515]; *Flanders* v. *White*, 142 Ore. 375, 382-384 [18 P.2d 823]; *In re Bonkowski's Estate*, 266 Mich. 112, 115-116 [253 N.W. 235]; *Carpenter* v. *Wynn*, 252 Ky. 543, 549 [67 S.W.2d 688].) The doctrine is designed to carry out the probable intention of the testator when there is no reason to suppose that he intended to revoke his earlier will if the later will became inoperative. (*Estate of Marx*, 174 Cal. 762, 766 [164 P. 640, L.R.A. 1917F 234]; *Estate of Thompson*, 185 Cal. 763, 773, 775 [198 P. 795]; *Blackford* v. *Anderson*, 226 Iowa 1138, 1163 [286 N.W. 735]; *Flanders* v. *White*, 142 Ore. 375, 385-386 [18 P.2d 823]; *Rudy* v. *Ulrich*, 69 Pa. 177, 183 [8 Am.Rep. 238]; *In re Roeder's Estate*, 44 N.M. 578, 587 [106 P.2d 847]; *Stewart* v. *Johnson*, 142 Fla. 425, 430-431 [194 So. 869]; *In re Smalley*, 131 N.J.Eq. 175, 177-178 [24 A.2d 515]; *Stickney* v. *Hammond*, 138 Mass. 116, 120; *Gardner* v. *Gardiner*, 65 N.H. 230, 231-232 [19 A. 651, 8 L.R.A. 383]; *In re Appleton's Estate*, 163 Wash. 632, 640-642 [2 P.2d 71].) The doctrine has been invoked in California (*Estate of Marx*, 174 Cal. 762, 765-767 [164 P. 640, L.R.A. 1917F 234]; *Estate of Thompson*, 185 Cal. 763, 772-776, 786 [198 P. 795]), and is sustained by the weight of authority. (See cases collected in 62 A.L.R. 1401-1410; 115 A.L.R. 721-725; 68 C.J., Wills, § 483, pp. 799, 800; 28 R.C.L. 182, 183; 38 L.R.A.N.S. 802; 1 Ann.Cas. 609, 610; 1 Jarman on Wills (6th ed.), Bigelow, 154; Page on Wills, § 478; Underhill on Wills, § 252; Warren, *Dependent Relative Revocation*, 33 Harv.L.Rev. 337; Francis T. Cornish, *Dependent Relative Revocation*, 5 So.Cal.L.Rev. 273, 393.) In *Estate of Smith*, 140 Cal.App. 508 [35 P.2d 335], on which respondent relies, the proponent failed to prove the existence of the earlier will to which might be related any dependent

revocation. In *Estate of Olmstead,* 122 Cal. 224 [54 P. 745], the revocation of the will was not connected with the making of another will, so it could not be held that the testator intended the revocation of the will to depend upon the legal effectiveness of a new will. In *Estate of Martens,* 10 Cal.2d 395 [74 P.2d 238], the doctrine was inapplicable, for the testator made it clear by his revocation of the paragraph of his will appointing executors and his attempt to substitute his son and daughter in their place that he did not wish the persons originally named to serve as executors.

■ The doctrine is clearly applicable to the facts of the present case. The record makes clear the intention of the testator. He did not change his testamentary purpose but only minor details in its execution. The five cash legacies with residue to appellant church constituted the whole of his unaltered testamentary purpose. Since the second will was virtually identical with the first in the disposition of the testator's estate, it is clear that the first will was revoked only because the second duplicated its purpose and that the testator would have preferred the first will to intestacy as to a substantial part of his estate. ■ When a testator repeats the same dispositive plan in a new will, revocation of the old one by the new is deemed inseparably related to and dependent upon the legal effectiveness of the new. (*Estate of Thompson,* 185 Cal. 763, 775-776 [198 P. 795]; *Blackford* v. *Anderson,* 226 Iowa 1138, 1162, 1164 [286 N.W. 735]; *Charleston Library Soc.* v. *Citizens & So. Nat. Bk.,* 200 S.C. 96, 125-126 [20 S.E.2d 623]; *Flanders* v. *White,* 142 Ore. 375, 378, 386 [18 P.2d 823]; *Stewart* v. *Johnson,* 142 Fla. 425, 430-432 [194 So. 869]; *Stickney* v. *Hammond,* 138 Mass. 116, 121; *Wilbourn* v. *Shell,* 59 Miss. 205, 208-209 [42 Am.Rep. 363].) If the new will fails to give effect to the twice declared purpose of the testator, its revocatory clause falls, for a testator who repeats his purpose intends to confirm and not revoke it, and does not intend to have the new will operate as a revocation independently of its operation as a will. (*Blackford* v. *Anderson,* 226 Iowa 1138, 1158-1159 [286 N.W. 735]; *Rudy* v. *Ulrich,* 69 Pa. 177, 182-183 [8 Am.Rep. 238]; *Stewart* v. *Johnson,* 142 Fla. 425, 430-431 [194 So. 869]; *Wilbourn* v. *Shell,* 59 Miss. 205, 208-209 [42 Am.Rep. 363]; *Flanders* v. *White,* 142 Ore. 375, 383, 386 [18 P.2d 823].)

■ The trial court's finding that the testator intended to revoke the 1940 will unconditionally is not supported by the

evidence. All the testimony, including the testimony of Trust Officer Seaman and of Attorney Fogel and his secretary, shows that the testator wanted no change in his will except for the naming of a California executor. ■ Any conclusion as to the testator's intention must be considered in the light of his knowledge at the time he executed the will. (*Estate of Pearsons*, 99 Cal. 30 [33 P. 751]; *Estate of Ladd*, 94 Cal. 670 [30 P. 99]; *Estate of Bourn*, 25 Cal.App.2d 590 [78 P.2d 193].) ■ The testator was not advised that he might provide in his 1941 will that the revocation of the charitable bequest by the revocation clause in the 1941 will was dependent upon the legal effectiveness of the 1941 will to carry out his bequest, nor was he advised that the same result would follow under the doctrine of dependent relative revocation. In the light of his twice-declared intention to leave his residuary estate to appellant church, it cannot be held that he chose not to make the revocation conditional or not to have the doctrine of dependent relative revocation apply. It does not appear why the testator chose a new will rather than a codicil. Certainly it cannot reasonably be held that he made that choice in order to invalidate the charitable bequest if he did not live for thirty days. Nothing that he said or did indicated that he wanted the gift to fail if he did not live for thirty days. It does not follow from the fact that he was advised that the new will would not be effective unless he lived for thirty days that he intended that the charitable bequest should fail if he died within that period. To so hold would be to read into the charitable bequest an intentional condition precedent that the testator should live for more than thirty days. There is no evidence that the testator had any such intention.

The judgment is reversed with directions to admit the 1940 will to probate with the 1941 will and codicil.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied March 1, 1945.