The sister and nieces of Rose Strickman, deceased, appeal from an order admitting her will to probate, following a nonjury trial of their will contest. (Prob. Code, §§ 370-373)
On December 11, 1962 decedent executed a three-page typewritten will, prepared for her by attorney Ralph Nathanson. All of the dispositive provisions are set forth on pages 1 and 2. Page 3 contains the appointment of Nathanson as executor and Max Brown as alternate executor, a request that any surviving pets be placed in suitable homes, a signatory line for the testatrix, an attestation clause, and two signatory lines for the witnesses. No question is raised as to the validity of the execution of the will.
In the summer of 1963, the testatrix decided to substitute Brown for Nathanson as executor. She took the will to Brown's home and discussed the matter with him and his wife. She told them that the reason for the change was "due to the fact that the executor at that time was an attorney and she was leaving all her money to charity, and knowing how the attorneys worked, that the money would soon become dissipated and the charities would get very little."
The testatrix also stated that she desired to change the request concerning pets by providing that they be put to a "merciful death," explaining that her dog was very old.
Mrs. Brown had a typewriter in her home and agreed to type up a new page 3. The testatrix left the will with Mrs. Brown so that she could use the original page 3 as a form from which to copy. The will was then in the same physical condition as it was at the time of its execution, with the three pages thereof stapled together and to a back cover bearing the typed name of attorney Nathanson's law firm.
After typing the revised page 3, Mrs. Brown delivered it and the will (intact) to the testatrix. Shortly thereafter the testatrix detached the original page 3 from the will and inserted the revised page 3 in its place.
This appears from the testimony of one Ernst Sommer, who was asked by the testatrix to act as a witness to what she stated was her "changed" will. He read it over and agreed to so act. His signature as such witness appears on the revised page 3. At some later time one Joseph J. Hirsch apparently *Page 471 
signed his name on said page as the second witness. It was never signed by the testatrix.
It is agreed that this page is ineffective for any purpose other than to throw light on the testatrix's intention with respect to the changes which she desired to make in her will.
After the testatrix's death on January 24, 1965, there was found in her safe deposit box the original pages 1 and 2, the revised page 3, and the back cover. These pages had been arranged in the order of their respective numbers and were coupled to the back cover with paper clips. The original page 3 was never found.
On the trial of the will contest (Prob. Code, §§ 370-373) the December 11, 1962 will, in its entirety, was admitted to probate. Its due execution was proved by the two subscribing witnesses thereto, as required by Probate Code section 372[1] and they identified the original pages 1 and 2 and a copy of the original *page 3. 
[1] The undisputed evidence is that, when last seen or known to exist, the original page 3 was in the exclusive possession of the testatrix and under her exclusive control. When it could not be found after her death it raised a presumption that it was destroyed by her with the intention of revoking the provisions contained therein. (Estate of Bernard (1962) 206 Cal.App.2d 375, 384 [23 Cal.Rptr. 828].) No evidence was offered to rebut this presumption.
In order to prove the original page 3 as a "lost or destroyed" part of said 1962 will, it is necessary to comply with the provisions of Probate Code section 350
This section provides: "No will shall be proven as a lost or destroyed will unless proved [by the proponent thereof] to have been in existence at the time of the death of the testator, or shown to have been destroyed by public calamity, or destroyed fraudulently in the lifetime of the testator, without his knowledge; nor unless its provisions are clearly and distinctly proved by at least two credible witnesses."
Neither "public calamity" nor fraudulent destruction is involved herein and, as we have seen, there is no proof that the original page 3 was in physical existence at the time of the testatrix's death. Therefore, unless the word "existence," as used in section 350, can be interpreted as meaning legal rather than physical existence, only pages 1 and 2 of the will are admissible in evidence as effective testamentary provisions. *Page 472 
In Estate of Bristol (1943) 23 Cal.2d 221 [143 P.2d 689], the Supreme Court divided 4 to 3 on the issue as to whether the evidence was sufficient to uphold the trial court's finding that a codicil was in existence at the time of death. The majority upheld the finding.
Chief Justice Traynor (then Associate Justice) wrote the dissenting opinion, stating: "There is no evidence in the present case to support the finding that the codicil was in existence at the time of the testator's death." (P. 231.)
After concluding his analysis of this decisive issue, Justice Traynor went on to state, by way of "clarification," that section350 "is concerned, not with the rules governing revocation, which are specifically set forth in section 74 of the Probate Code, but with the procedure for establishing a lost or destroyed will." (Italics ours.)
[2] Thus, in the instant case, section 350 does not prevent the use or admissibility of a copy of the original page 3 asevidence but it does preclude the probate of such page as a part of the 1962 will. This is made clear by Justice Traynor.
"Compliance with the substantive provisions that determine the status of the will as an executed instrument is not enough to render the will operative as a conveyance. . . . for it cannotbe probated if the requirements prescribed in the code for the probate of [lost or destroyed] wills cannot be met." (23 Cal.2d, at pp. 235-236; italics ours.)
In an article entitled "Statutory Restrictions on Probate ofLost Wills," Professor W.W. Ferrier, Jr. discusses the question of whether the word "existence," as used in section 350 and similar statutes of sister states, should be interpreted as "legal" existence rather than "physical" existence. He concludes that "These [California] decisions very definitely establish the California rule as opposed to the `legal existence' theory. . . ." (32 Cal.L.Rev. 223, fn. 4.)
Justice Traynor explains the rationale of the California rule, although not using the terms "legal existence" and "physical existence."
"In section 350 of the Probate Code, the Legislature has exercised the greatest caution not to leave the way open for the establishment of spurious wills or the probate of wills that testators have intentionally destroyed without leaving adequate proof of such destruction, even going so far as to preclude probate of a will that is lost or destroyed, other than by fraud or public calamity, before the death of the testator. *Page 473 
[Citations.] It has placed upon the testator the responsibilityfor the safekeeping of his will until his death. At the same time it has recognized that once the testator dies there is greater risk of loss or destruction of his will, and it has therefore sought to insure that his wishes would nonetheless be carried out, by providing that his will need not be in existence at the time of probate so long as there is proof of its existence at the time of death and proof by two witnesses of its provisions. It is for the Legislature to choose or modify the course it deems proper in this regard, not for the court to undertake modifications merely because in its view the Legislature has acted in excess of caution." (Italics ours.)
We have thus concluded that, although the three-page will of 1962 was validly executed, page 3 thereof cannot be probated because it was no longer in physical existence at the time of the death of the testatrix.
[3a] The fact that it was the third or signatory page which was missing does not in our opinion create any different legal problem than if it were the second page that was missing.
We give this example: Suppose the testatrix had desired to revoke one of the specific bequests appearing on page 2 and had asked Mrs. Brown to retype that page, eliminating such bequest; then, assuming the other circumstances are parallel to those present here, it would be our opinion that the first and third pages could be probated but that the second page could not.
While an unfortunate aspect of such a situation is that all
of the specific bequests contained on page 2 would fail, we see no way of avoiding the procedural requirement of section 350
(Estate of Bristol, supra.)
It is well settled that there can be a partial revocation of a validly executed will. In Estate of Martens, 10 Cal.2d 395
[74 P.2d 238], the testator directed his son-in-law to draw a line with a typewriter through the names of the executors in a will and to insert the names of a daughter and a son as executors, and the testator then directed the son-in-law to write a memorandum which he (the testator) signed and which was witnessed by the son-in-law to the effect that the change was made on the date stated. The court properly held that only the portion of the will relating to executors was canceled with intent to revoke it and that the remainder of the will was entitled to be probated.
The same result should obtain in the instant case. Here the *Page 474 
testatrix made an ineffectual attempt to change executors and to have her aged dog put to a "merciful death" instead of being placed in a "loving" home. It is completely clear that she never intended to nor did she ever make any other changes in the provisions of her will, all of which other provisions are set forth on pages 1 and 2 thereof.
The trial court adopted the theory of dependent relative revocation and revived the 1962 will in its entirety. However, under either this theory or the theory of partial revocation, the same result obtains. Page 3 of the 1962 will cannot be probated
because it cannot be proven "to have been in [physical] existence at the time of the death of the testator." (§ 350)
[4] Under such circumstances we see no reason to go into any lengthy discussion of the doctrine of dependent relative revocation, the purpose of which is "to carry out the probable intention of the testator when there is no reason to suppose that he intended to revoke his earlier will if the later will became inoperative." (Estate of Kaufman, 25 Cal.2d 854, 859 [155 P.2d 831]; Estate of Cuneo, 60 Cal.2d 196, 202 [32 Cal.Rptr. 409,384 P.2d 1, 7 A.L.R.3d 1132]; Estate of Marx, 174 Cal. 762, 766 [164 P. 640, L.R.A. 1917F 234].)
[3b] What was said in Kaufman, supra, is particularly appropriate here: "Since the second will was virtually identical with the first in the disposition of the testator's estate, it is clear that the first will was revoked only because the second duplicated its purpose and that the testator would have preferred the first will to intestacy as to a substantial part of his estate." (25 Cal.2d, at 860.)
Respondent points out that in Estate of Cuneo, supra, the doctrine of dependent relative revocation was applied in a situation in which the original will was destroyed by the testatrix and a copy thereof was admitted in evidence.
However, section 350 was never even mentioned in the briefs on appeal or in the opinion of either the District Court of Appeal or that of the Supreme Court, Justice Peek simply saying: "The original will was not found. However a copy thereof was identified and introduced into evidence."
Our conclusion is that, under either of the two theories discussed above, pages 1 and 2 of the will duly executed by the testatrix on December 11, 1962 are entitled to be probated as the will of said testatrix.
Appellants have not raised any issue as to the appointment of Max Brown as executor and we see no reason to discuss it. *Page 475 
The order admitting the will to probate is modified by deleting paragraph 2 therein[2] and inserting in place thereof the following: "That pages 1 and 2 of the document dated December 11, 1962, and filed herein on March 1, 1965, are admitted to probate as decedent's last will."
In the interests of justice, costs on appeal are to be paid by and out of decedent's estate. (Rule 26(a), California Rules of Court.)
Shoemaker, P.J., and Taylor, J., concurred.
[1] All section references herein are to the Probate Code.
[2] This paragraph reads: "The document filed herein, dated December 11, 1962, is admitted to probate as decedent's last will."