142 So.2d 130 (1962)
In re ESTATE of Helen D. LUBBE, Deceased.
Brantley BURCHAM, Etc., Appellant,
v.
Mildred KAMORASKI and Lillian Smith, Appellees.
The FLORIDA NATIONAL BANK OF JACKSONVILLE, Etc., Appellant,
v.
Mildred KAMORASKI and Lillian Smith, Appellees.
Nos. 2652, 2653.
District Court of Appeal of Florida. Second District.
May 2, 1962.
Rehearing Denied June 18, 1962.
*131 Charles J. Cullom, Orlando, and Edward S. Hemphill, Jacksonville, for appellants.
David W. Cunningham, Winter Park, for appellees.
WHITE, Judge.
These are consolidated appeals by Florida National Bank of Jacksonville and Brantley Burcham as co-executors under the last will and testament of Helen D. Lubbe dated August 24, 1959. Brantley Burcham was named sole beneficiary of the decedent's residuary estate. The appellants challenge a probate order declaring the residuary bequest void on the ground that Brantley Burcham was an interested subscribing witness to the will.
The issues of the case also focus attention on a prior will of Helen D. Lubbe dated August 15, 1958. This will was drafted by Brantley Burcham who was named therein as residuary beneficiary and co-executor and attorney for the estate. The will was attested by Brantley Burcham and two disinterested witnesses. Florida National Bank of Jacksonville was named co-executor as in the later and final will here involved.
On August 24, 1959 Helen D. Lubbe executed her last will and testament, expressly revoking all her prior wills. Twenty-four bequests were identical with those in the previous 1958 will. One specific bequest was added to the last will, while eight specific bequests which had been included in the previous will were omitted. Brantley Burcham drafted the will and was a subscribing witness with Frieda Schmidt, a relative of the decedent, and one Walter L. Maxley. Frieda Schmidt was bequeathed certain furniture while Brantley Burcham was bequeathed all the estate remaining after the several bequests hereinbefore mentioned. Thus it would appear, on the face of it, that Walter L. Maxley was the only subscribing witness not interested in the estate of Helen D. Lubbe under her last will and testament.
Helen D. Lubbe died November 8, 1959 at the age of ninety and left a substantial estate. Her last will of August 24, 1959 was probated. On November 14th, 1960 Mildred Kamoraski and Lillian Smith, the appellees herein and heirs at law of the decedent, filed their petition for an order adjudging the bequest to Brantley Burcham void by operation of Fla. Stat. § 731.07(5) F.S.A.[1] No relief was sought as to the bequest to Frieda Schmidt, and a prayer for voidance of certain charitable bequests was abandoned in view of the fact that the decedent left no surviving spouse or lineal descendant by blood or adoption.[2] The co-executors filed separate answers which, in combination, denied invalidity of the disputed bequest inasmuch as (1) there were at least two witnesses who were not interested in the particular bequest, (2) the bequest was valid under the saving clause in § 731.07(5), supra, and (3) the bequest was, in effect, preserved by the doctrine of dependent relative revocation as applied to the two wills of the decedent.
*132 The two wills were admitted in evidence on final hearing before the probate judge whose order adjudged void the residuary bequest and determined that these assets should pass to the heirs of Helen D. Lubbe as intestate estate under the statutory order of succession.[3] The court's conclusions were based on findings that Brantley Burcham was an interested witness, that he did not come within the saving clause of the statute and that the doctrine of dependent relative revocation was not applicable. The three points presented on appeal were not raised by the same appellant, but for convenience each point will be treated as though it were raised by both appellants. These points pose substantially the same questions as those raised by the answers of the appellants and enumerated in the preceding paragraph, viz.,
1. Whether the fact that at least two witnesses were disinterested in the particular bequest makes Brantley Burcham a disinterested witness within the meaning of the statute. This point is emphasized primarily by appellant Brantley Burcham.
2. Whether, assuming Brantley Burcham to be an interested witness, his claim to the residuary estate nevertheless is preserved under the saving clause in the statute. This point is emphasized by the corporate executor which takes the position that if the residuary bequest in the last will fails, the last will to that extent was "not established" and that Brantley Burcham accordingly should take as residuary beneficiary under the preceding 1958 will.
3. Whether the residuary interest is preserved to Brantley Burcham under the doctrine of dependent relative revocation.
This case has extraordinary aspects and it is well to note at the outset, by way of emphasis, the historical reason for the penalty rule against interested witnesses to wills. It is succinctly stated in Redfearn on Wills and Administration of Estates in Florida, 2nd Ed., § 75:
"* * * This rule that legatees and devisees named in a will lose their interest under the will if they act as attesting witnesses is based on the principle that the temptation to them to perjure themselves in favor of their interest is thus removed when the will is attacked."
Treating together the first two points on appeal, we shall now consider whether Brantley Burcham was an interested witness and, if so, whether he comes within the saving clause of the statute so that the bequest to him may be sustained notwithstanding his interest and despite the fact that he is not an heir at law of the decedent. It is first contended that § 731.07(5) should have been construed by the probate judge to mean that no devise or bequest to a subscribing witness is valid unless there are at least two other subscribing witnesses disinterested in the particular devise or bequest. This meaning would be derived from what is urged as the correct interpretation of the first sentence of the section:
"All devises and bequests to subscribing witnesses are void unless there are at least two other disinterested subscribing witnesses to the will."
The argument, citing a text on English grammar and sentence construction,[4] is as follows: The subject of the first clause, "All devises and bequests to subscribing witnesses are void * * *" is the subject of the independent clause and the heart of the sentence, whereas the subordinate clause "* * * unless there are at least two other subscribing witnesses to the will" does not express a complete thought and cannot stand alone, being an adverbial clause dependent upon the first or independent clause for its meaning. It is accordingly submitted that the words "disinterested subscribing *133 witnesses" relate back to the subject of the independent clause "devises and bequests", thus rendering the bequest good since there were two witnesses not interested in that bequest.
The foregoing argument is scholarly, ingenious and novel. Upon mature consideration, however, we think the proposed interpretation is strained and contrary to the clear intent of the statute. It would render nugatory the words "to the will" following the word "witness" and it would be inconsistent with the evolution of this phase of the law as it has been developed by statute to the present time. At common law under the Statute of Frauds a will was invalid if one or more of the witnesses were beneficially interested under the will. A small legacy to a witness, a gift of some trifling amount to a faithful servant who happened to be called to witness a will, would invalidate the entire instrument. In order to remedy the unnecessary harshness of this situation Statute 25 George II, c6, was enacted in 1752 making such a witness competent to attest the execution of the will but continuing the invalidation of the bequest to him. Thus was accomplished the purpose of saving the will by purging the witness' share in order to make him competent. This is how the law stood in England on July 4, 1776 which, by adoption, later became law in Florida. Fla. Stat. § 2.01 F.S.A.; Redfearn on Wills and Administrations of Estates in Florida, § 75.
Florida and other states have modified the common law rule by statutes providing in effect that if there are a sufficient number of competent witnesses to the will without counting the interested witness, the bequest to such witness shall not be affected. Legislation in many states has further qualified the rule by adding a saving clause enabling an interested witness to take up to the amount of the share he would have taken by intestacy not exceeding the interest he would have received under the will.
We now look at the intendment of the Florida Statute as reflected in the language there employed. It is appellants' contention that an interested witness who is not an heir at law nevertheless may take by reason of a like legacy in an immediately preceding will of the same testator because of the wording of the saving clause and because the law does not favor partial intestacy. The saving clause in the Florida statute does not specifically provide that it shall pertain only to heirs. We think it implicit, however, that it was intended to save bequests to interested witnesses only to the extent that such witnesses could take by intestacy. The clause provides that the interested witness shall take such proportion of the devise or bequest made to him as does not exceed the share of the estate which would be "distributed to him" if the will were not established. The words "distributed to him" are relative to the word "distributee" which is defined as a person entitled to the personal estate of one who has died intestate. Bouv.Law Dict. Rawle's Third Revision, p. 896, and case citation; Ballantine's Law Dictionary; Black's Law Dictionary.
The case of In re Dwyer, 1920, 192 App. Div. 72, 182 N.Y.S. 64, involved a New York statute similar to the Florida statute. Section 27 of the New York Decedent Estate Law, McKinney's Consol.Law, c. 13, saves the will by purging the share of the interested witnesses and provides:
"But if such witness would have been entitled to any share of the testator's estate, in case the will was not established, then so much of the share that would have descended, or have been distributed to such witness, shall be saved to him, as will not exceed the value of the devise or bequest made to him in the will * * *." (Emphasis ours.)
After commenting on the evolution of the law which led to the passage of the New York statute the opinion further states:
"* * * [T]he primary purposes of the statute were, first, to save the *134 will, by making the legatee who witnessed it a competent witness; and, second, to save to such witness the share which he would have inherited `in case the will was not established,' limited, however, to the amount attempted to be given to him under the will. That part of the statute is clear, certain, and definite." (Emphasis ours.)
For other decisions construing statutes similar to the Florida statute see Canis v. Harris, 1958, 166 Cal. App.2d 55, 332 P.2d 788; Guenther v. Binder, 1956, 272 Wis. 176, 74 N.W.2d 740, 742; In re Hunt's Estate, 1953, Sur., 122 N.Y.S.2d 765; In re Ehrlich's Estate, 1936, 158 Misc. 540, 287 N.Y.S. 313; Cromwell v. Stevens, 1925, 212 Ky. 209, 278 S.W. 555.
We have been cited no decision construing such a saving clause as applicable to witnesses other than heirs who could take by intestacy; nor has our research revealed any such decision. 1 Page on Wills, Lifetime Ed., § 335, refers only to cases of intestacy:
"* * * [A] beneficiary is made a competent witness by destroying his gift, although it is generally provided that if such beneficiary would have taken in case of intestacy, he shall take such portion of a testator's estate as he would have taken if testator had died intestate if it does not exceed the interest given him by the will." (Emphasis ours.)
In Atkinson on Wills, Hornbook Series, 2nd Ed., page 315, the text is to the same effect:
"If the attesting witness is also an heir at law of testator, he does not have a disqualifying interest unless the share which he takes by the will exceeds that which he would take in case of intestacy * * *." (Emphasis ours.)
Redfearn on Wills and Administration of Estates in Florida, 2nd Ed., § 75, contains the following:
"When the interest of a legatee or devisee is defeated by his having attested the will, such interest is distributed under the residuary clause of the will if there is such clause of sufficient breadth to meet the situation. If there is no such residuary clause, then such interest is administered as in cases of intestacy * * *." (Emphasis ours.)
The Model Execution of Wills Act, adopted in some states but not in Florida, appears by apt language to have avoided this problem of interpreting the saving clause:
"No will is invalidated because attested by an interested witness; but any interested witness shall, unless the will is also attested by two disinterested witnesses, forfeit so much of the provisions therein made for him as in the aggregate exceeds in value, as of the date of the testator's death, what he would have received had the testator died intestate."
We conclude that appellant Brantley Burcham was an interested subscribing witness within the meaning of § 731.07(5) F.S.A. and that the bequest to him does not come within the saving clause of said section. This disposes of the first two points on appeal and leaves for consideration the third and final point, viz., whether the doctrine of dependent relative revocation is applicable so as to enable said appellant to take the residuary estate notwithstanding the failure of the bequest to him in the probated will.
The doctrine of dependent relative revocation is a rule of presumed intention rather than an absolute rule, and the limitations of the doctrine are apparent from its definition. See 57 Am.Jur., Wills, §§ 515, 517. Under the doctrine if a testator *135 revokes or destroys his old will with the present intention of making a new will and the new will is not made or, if made, fails for any reason, a rebuttable presumption arises that the testator would have preferred the old will to intestacy. In the absence of evidence overcoming the presumption, the prior will may be admitted to probate if its contents can be ascertained. See 34 Fla.Jur., Wills, § 115. The proper application of the doctrine depends upon a sufficient showing that the provisions of the invalid will are not materially different from the prior will and that the testator must have intended to revoke his prior will only if his new will were valid. Stewart v. Johnson, 1940, 142 Fla. 425, 194 So. 869; 57 Am.Jur., Wills, §§ 514, 515; 34 Fla.Jur., Wills, §§ 115, 116.
In the instant case the last will was valid, only the residuary bequest being void by reason of incapacity to take. Therefore, if the doctrine is to be applied at all here, it must be applied to only a portion of the will, i.e. the bequest to Brantley Burcham. Appellants have cited no cases nor have we located any Florida decision applying the doctrine to only a portion of the will where the rest of the will was valid. Two decisions in other jurisdictions have applied the doctrine where charitable bequests otherwise would have failed because the testator did not survive the statutory period required after execution of his last will. In each case the testator made only minor changes in detail of execution, the dispositive features being practically identical. In re Kaufman's Estate, 1945, 25 Cal.2d 854, 155 P.2d 831; Linkins, et al. v. Protestant Episcopal Cathedral Foundation of the District of Columbia, et al., 87 U.S.App.D.C. 351, 187 F.2d 357, 28 A.L.R.2d 521. These cases are materially distinguishable from the present case and, in any event, they have not been followed in this jurisdiction. See In re Pratt's Estate, Fla. 1956, 88 So.2d 499.
In the Pratt's Estate case, supra, the testator made several specific bequests and divided the rest of his estate into three equal portions, one of which was to go to certain named charities. The portion left to the charities was held invalid under the then existing statute providing that in order for such bequests to be valid the will must have been executed at least six months before the testator's death. The charities contended that the testator had made the same bequests in an earlier will executed more than six months prior to his death and that the probated will merely reiterated his dispositive scheme. Motion to compel production of the preceding will was denied. The question was whether or not the charitable bequests in the preceding will should have been revived under the doctrine of dependent relative revocation. The appellants were not attempting to revive the entire prior will but only so much as related to them. The Supreme Court of Florida, deciding adversely to the appellants, stated 88 So.2d at page 503:
"* * * We know of no principle of law which would authorize us to look beyond the probated will for testamentary intent in such a case. We do not understand that the `dependent relative revocation' doctrine, useful and salutary as it is in a proper case, carries with it the authority to disregard so well-established a rule as that which forbids us to write a new will for the testator in the face of a clear intent expressed in a proper instrument."
It is noted that the statute pertaining to charitable bequests was amended after the Pratt's Estate decision to present § 731.19. Under this amendment charitable bequests made within six months of the testator's death would be valid if such bequests were also included in his immediate prior will executed more than six months prior to his death and were in substantially the same amounts and to the same beneficiaries. Assuming that the Pratt case does not rule out the possibility of applying the doctrine to only a portion of a will in a proper case, it must be considered whether the testatrix would have preferred her old will, or the corresponding provision thereof, rather than have the bequest fail. As stated before, *136 the new will had several additions and deletions inconsistent with the prior will. The dominant purposes of Helen Lubbe's will was to dispose of her estate, name her burial place and appoint an executor and attorney for the estate. Item Three, which was the only dispositive section of the will, contained twenty-six specific bequests to named individuals. She set out what appeared to be her primary desires in those twenty-six bequests and then left the residue, if any, to appellant Brantley Burcham. It can hardly be said that the dominant purpose of this will was to pass the residuary estate.
The doctrine of dependent relative revocation has been applied to a portion of a will in some cases where the testator attempted some change in the will without intending to revoke it entirely and without properly re-executing it. In re Roeder's Estate, 1940, 44 N.M. 578, 106 P.2d 847; 57 Am. Jur., Wills, § 516. An examination shows those cases to be clearly distinguishable from the instant situation. See Trotter v. Van Pelt, 1940, 144 Fla. 517, 198 So. 215, 131 A.L.R. 1018; 34 Fla.Jur., Wills, § 112.
Generally when a second will is properly executed according to the statute, with an express revocation clause, though it should be prevented from operating by the incapacity of the devisee or any other matter dehors the will, the former will is nevertheless revoked by it. See and compare Crawford's Estate v. Crawford, 1955, 225 Miss. 208, 82 So.2d 823, 59 A.L.R.2d 1; In re Melville's Estate, 1914, 245 Pa. 318, 91 A. 679, 681, L.R.A. 1916C, 98.
In re Blankenship's Estate, Fla. 1960, 122 So.2d 466, was decided after the amendment to § 731.19. In that case the decedent executed several successive wills, the last two of which were executed within six months prior to his death. Each of the wills contained substantially the same charitable bequests. The Supreme Court of Florida held that the charitable bequests were voidable under a literal construction and application of the statute and that the statute must be given its plain meaning even though it unfortunately defeated the charitable bequests in the immediately preceding will executed within the six months period. Conceding that the result seemed harsh and illogical, the court held itself without authority to violate the statute. The court stated that the right to dispose of property by will is not inherent, is not a constitutional right but a creature of statute subject to prohibition, regulation and control by the legislature. After holding that the Pratt's Estate case was controlling, the court continued:
"Every statute which is tailored in inflexible terms designed to be applied generally without exercise of judicial discretion in its application is certain to and does result in a seeming or actual injustice in some specific cases. This may be such a specific case. But this is a weakness of the statute and, again, the courts may not remedy it."
And further:
"We therefore agree with the district court that `the amendment obviously purports to mitigate the severity of the then existing statute.'
"But the legislature, by words clear and unambiguous, spelled out the extent to which it was willing and intended to mitigate the severity of the statute. The courts cannot extend it further.
"For whatever its reasons were the legislature specifically limited consideration of prior dispositive intent to the next to the last will and then only if it was executed more than six months before the testator's death. This it had the power to do."
The record before the probate judge disclosed appreciable differences between the testatrix' two wills, and her last will was essentially valid. The evidence was not sufficient to justify a conclusion *137 that the testatrix would have preferred her previous will had she known that the residuary bequest in her last will would be inoperative; nor was there demonstrated any legal basis or justification for a partial application of the doctrine of dependent relative revocation. It therefore was not error to hold the doctrine wholly inapplicable, as any imposition thereof would have resulted incongruously in a court-made will.
It may be that the testatrix here fully intended to provide added compensation or reward for her attorney by residuary bequest regardless of its amount; but the probate judge, on the question of disqualification to take because of interest, was required to apply restrictive law which gave him no discretion. There are also other disturbing features of the case, leaving much to conjecture and making this by no means a comfortable decision. On the other hand we are thoroughly convinced of the legal rectitude of the findings and conclusions of the probate judge.
It is evident that the statute here involved is not a flexible rule of procedure but a stern and mandatory rule of substantive law. The courts cannot rightly pervert such rules to accommodate the occasional case of hardship. In this case to hold with the appellants would defeat the implicit purpose of Fla. Stat. § 731.07(5) F.S.A. It is axiomatic that judicial decision prompted by temporary expediency tends to make bad law.
Reverting again to the question of the doctrine of dependent relative revocation the probate judge could not, nor can we on this record, confirm a "presumed intention" on the part of the testatrix that had she known that the residuary bequest in her last will would prove inoperative, she would have wished her residuary estate to go according to her expressly revoked will of 1958. The residuary estate of Helen D. Lubbe accordingly passes under the law of descent and distribution. In the case of In re Stephan's Estate, 1940, 142 Fla. 88, 194 So. 343, 128 A.L.R. 440, the court said:
"A testator may be intestate as to all of his estate or as to a part thereof. The statute of descents applies to any property of a decedent not lawfully disposed of by will or otherwise as provided by law."
Finding no error, we conclude that the appeals are without merit and that the order of the probate judge in all respects should remain undisturbed.
Affirmed.
ALLEN, Acting C.J., and KANNER, J., concur.
NOTES
[1] § 731.07(5) Fla. Stat., F.S.A. reads as follows:

"All devises and bequests to subscribing witnesses are void unless there are at least two other disinterested subscribing witnesses to the will. If a subscribing witness would be entitled to any share of the estate of the testator in case the will were not established, he shall take such proportion of the devise or bequest made to him in the will as does not exceed the share of the estate which would be distributed to him if the will were not established."
[2] Fla. Stat. § 731.19 F.S.A.
[3] Fla. Stat. § 731.23 F.S.A.
[4] Warriner, English Grammar and Composition, p. 53.