807 So.2d 78 (2001)
FIRST UNION NATIONAL BANK OF FLORIDA, N.A., et al., Appellants,
v.
ESTATE OF Byron B. MIZELL, et al., Appellees.
Nos. 5D00-1534, 5D00-1551, 5D00-1590.
District Court of Appeal of Florida, Fifth District.
November 30, 2001.
Rehearing Denied February 12, 2002.
Martha A. Chapman, of Martha A. Chapman, P.A., Orlando, for Appellant, Alfredo Martinez-Garcia.
Virginia B. Townes, of Akerman, Senterfitt & Eidson, P.A., Orlando, and Kenneth L. Mann, of Kenneth L. Mann, P.A., Orlando, for Appellants, First Union National Bank, N.A., Richard A. Leigh and Habitat for Humanity.
Joseph W. Fleece, III, of Holland & Knight, LLP, St. Petersburg, for Appellants, Sheriffs Youth Ranches, Inc. and The George Washington University.
David J. Kohs and Alexander S. Douglas, II, of Pohl & Short, P.A., Winter Park, for Appellee, Lunelle M. Siegel.
GRIFFIN, J.
This is the appeal of a final judgment revoking a will and declaring the estate to be intestate. We affirm in part and reverse in part.
*79 The deceased, Byron Butler Mizell ["Mizell"], died in October 1993, leaving a substantial estate that was to be distributed according to a will, trust and deed executed shortly before his death. Mizell's only child, Lunelle M. Siegel ["Siegel"], the plaintiff below, brought an Amended Petition for Revocation of Probate of Will on the grounds that Mizell did not possess testamentary capacity to execute a will, or alternatively, that such execution was the result of undue influence.
According to Siegel, Mizell's marriage with her mother, Eileen Goodwin Mizell, was happy until Mizell's parents died, and he began to drink heavily. To wrap up his parents' affairs, Mizell had to move to Georgia. Upon his return, Siegel claims that Mizell routinely became abusive towards her mother in drunken rages. In 1977, when Siegel was fifteen, Mizell locked Siegel and her mother out of the house after a physical altercation in which Mizell attempted to strangle Siegel. The mother then began a divorce action. A month after the locking out incident, Mizell wrote a holographic will, leaving Siegel only a dollar and stating that Siegel had been previously provided for by a significant gift of land.[1] The will also purported to give stocks and bonds to Mizell's alma mater, George Washington University; left cash gifts to various individuals; and distributed the residuary to Magnolia Manor Retirement Home, a nursing home where his parents resided before their death. In 1978, Mizell executed another will which did not provide for Siegel and left all of Mizell's assets to Magnolia Manor. Mizell's divorce from Siegel's mother was final in 1979.
In 1991, Mizell contacted an attorney, seeking estate planning advice because he considered the 1978 will to be inadequate. Over several months, documents were drafted but never executed because Mizell was unsure about his intentions. Around the same time, Mizell contracted AIDS and his health began to deteriorate. In early 1993, through the intense involvement of Mizell's companion, appellant Alfredo Martinez-Garcia, Mizell engaged in a number of odd episodes of estate planning and will drafting involving a succession of different lawyers, ultimately culminating in the will, trust and deed that were the subject of the litigation below.
The principal issues on appeal involve attacks on the trial court's invalidation of these testamentary instruments. Appellant has offered a thorough critique of the record evidence but, ultimately, we conclude that the lower court's decision to revoke the probate of the 1993 testamentary instruments must be affirmed. There is competent substantial evidence in the record to support the trial court's decision that the 1993 instruments were procured through undue influence and that Mizell was not competent when he executed the instruments. We cannot affirm, however, the trial court's determination that Mizell died intestate and that Siegel, as his sole heir, inherits the entire estate. The intestate determination necessarily requires a determination that the 1978 will is ineffective.
The trial court briefly addressed the 1978 will in its order, observing that it was not found until six years after Mizell's death and that it had not been admitted to probate. The lower court ruled that the 1978 will had been revoked by the express revocation clause in the 1993 will, citing to the language in In re Estate of Lubbe, 142 So.2d 130, 136 (Fla. 2d DCA 1962) that a revocation clause is effective in a subsequent will even if the later will cannot *80 operate due to incapacity of the devisee, undue influence or some other matter outside the will. We can envision a circumstance where undue influence may not prevent the operation of an express revocation clause since it is possible that the undue influence may be limited to particular aspects of a new will, not the decision to make a new will. Incapacity is another matter. The rule of Lubbe speaks to the incapacity of a devisee to take under a will, not the incapacity of the testator to make a will. We hold that the determination that the testator in this case, Mizell, was incompetent to make the 1993 will extends to the express revocation clause in that will. The 1978 will is thus not invalid simply by virtue of its revocation in the 1993 will.
The 1978 will was before the court as evidence in the contest over the 1993 will, but it has not been offered for probate. The trial court was correct to cite section 733.213, Florida Statutes (1999) and In re Estate of Smith, 716 So.2d 335 (Fla. 2d DCA 1998) for the proposition that the court cannot determine the validity and efficacy of the 1978 will until this issue is, in some manner, placed directly before the court and all interested parties have been given an opportunity to be heard. The will may be offered for probate, Siegel may petition for intestate administration or some other procedure may be appropriate to bring before the court the validity of the 1978 will. In any event, interested persons reasonably expected to be affected by the outcome must be given proper notice.
AFFIRMED in part; REVERSED in part.
PALMER and ORFINGER, R.B., JJ., concur.
NOTES
[1] In 1972, Mizell created an irrevocable trust for Siegel in which he deeded 361 acres of Georgia land; under the terms of the trust, the land or its proceeds were to be distributed to Siegel at age 25.