905 So.2d 1002 (2005)
Gary M. WEHRHEIM, et al., Appellants,
v.
GOLDEN POND ASSISTED LIVING FACILITY, Appellee.
No. 5D04-2724.
District Court of Appeal of Florida, Fifth District.
July 1, 2005.
*1004 Larry P. Studer, Orlando, for Appellants.
Eric S. Mashburn, Winter Garden, for Appellee.
SAWAYA, J.
Gary Wehrheim, Albert D. Wehrheim, Jr., and Debra L. Wehrheim appeal the final summary judgment rendered in the underlying adversarial probate proceedings between the Wehrheims and Golden Pond Assisted Living Facility that denied the Wehrheims' petitions to deny the decedent's will to probate, to remove the personal representative, and for administration. In essence, the summary judgment admits to probate the decedent's 2002 will, which leaves the estate to Golden Pond thereby excluding the Wehrheims, who are the decedent's children. There are three issues we must resolve: 1) whether the Wehrheims lacked standing to assert the invalidity of the will and to petition for removal of the personal representative based on prior wills of the decedent that did not include them as beneficiaries; 2) whether the doctrine of dependent relative revocation applies; and 3) whether the revocation clause of the will may be valid if the remainder of the will is declared invalid based on undue influence. We will address these issues separately even though we recognize that the latter two are interrelated with the first. However, before we address these issues, it is necessary to discuss the facts and procedural history of the instant case.

Facts and Procedural History
The decedent, Dorothy Wehrheim, died while residing at Golden Pond Assisted Living Facility. While Dorothy was a resident of Golden Pond, Rebecca Fierle, a geriatric care manager, was contacted by the administrator of Golden Pond to assist Dorothy with arranging her personal affairs.[1] *1005 After meeting with Fierle, Dorothy executed a contract and a power of attorney authorizing Fierle to act on her behalf regarding her personal affairs. Fierle reviewed Dorothy's previous will, suggested to Dorothy that she leave her estate to a charity, and made arrangements for the preparation of a new will. Once the will was prepared, Fierle brought it to Golden Pond, where Dorothy signed it on July 23, 2002. This will names Golden Pond as the primary beneficiary of Dorothy's estate and Rebecca Fierle as personal representative.
The Wehrheims are Dorothy's children. While Dorothy had executed wills in 1998, 1999, and 2000, none of these prior wills named her children as beneficiaries.[2] The children filed a petition for administration and a petition to deny admission of the 2002 will to probate on the grounds that it was the product of undue influence and executed by the decedent without testamentary capacity. The executive officer of Golden Pond filed a petition for formal administration of the 2002 will, and the litigation commenced.
Thereafter, Golden Pond filed a motion for summary judgment, and the arguments raised by the parties relative thereto explain the interrelationship between the issues previously stated. Golden Pond's motion asserted that based on the prior wills that did not name the Wehrheims as beneficiaries, the Wehrheims lacked standing to contest the validity of the 2002 will. Specifically, Golden Pond argued that even if the Wehrheims were successful in their attempts to exclude the 2002 will from probate, the Wehrheims would not acquire any interest in the estate because there is another presumptively valid will of the decedent entitled to probate that does not give them any interest in the estate. The Wehrheims argued that lack of standing is an affirmative defense that Golden Pond waived because it did not properly plead it. The Wehrheims also argued that even if Golden Pond properly pled standing as an affirmative defense, Golden Pond's argument is based on the doctrine of dependent relative revocation, which does not apply because the terms of the 2002 will are completely different from the terms of the prior wills and, therefore, there is no presumption that the decedent would have preferred the old will over intestacy. Finally, the Wehrheims argued that while the testamentary portions of the will were invalid based on undue influence, the revocation clause, which revokes the decedent's prior wills, could nevertheless be valid. Having specifically framed the three issues, we will address each in the order previously presented.

Standing
Unless otherwise ordered by the probate court, proceedings to remove a personal representative and for revocation of probate of a will are considered adversary proceedings. Fla. Prob. R. 5.025(a). Adversarial probate proceedings are governed by the Florida Rules of Civil Procedure. Fla. Prob. R. 5.025(d)(2). While in most types of civil cases standing is generally considered an affirmative defense that can be waived if not properly pled,[3] this is *1006 not the case in adversarial probate proceedings to contest the validity of a decedent's will or to attempt to remove the designated personal representative. We come to this conclusion based on section 733.109(1), Florida Statutes (2003), which provides that any "interested person" may petition the court for revocation of probate, and section 733.506, Florida Statutes (2003), which provides that "[p]roceedings for removal of a personal representative may be commenced by the court or upon the petition of an interested person."[4] In order to properly petition for revocation of probate, the petition must "state the interest of the petitioner in the estate and the facts constituting the grounds on which revocation is demanded." Fla. Prob. R. 5.270(a). Hence, whether a person is an "interested person" is an element that must be established by the petitioner seeking revocation of probate and, although not specifically stated by rule, by a person seeking removal of a personal representative. Therefore, it is not necessary to specifically plead standing as an affirmative defense in these adversarial probate proceedings. Accordingly, we reject the Wehrheims' argument that Golden Pond waived the standing issue because it did not properly plead it as an affirmative defense.
The term "interested person" is defined as "any person who may reasonably be expected to be affected by the outcome of the particular proceeding involved." § 731.201(21), Fla. Stat. (2003). Golden Pond correctly argues that a petitioner may not be an interested person in revocation and removal proceedings if previous and presumptively valid wills have been discovered that, similar to the current will, do not include the petitioner as a beneficiary of the estate. See Newman v. Newman, 766 So.2d 1091 (Fla. 5th DCA 2000), review denied, 786 So.2d 1187 (Fla. 2001); Cates v. Fricker, 529 So.2d 1253 (Fla. 2d DCA 1988). In this instance, it is the burden of the petitioner seeking to revoke the present will to establish that the previous will, which also excludes the petitioner as a beneficiary, is invalid. Cates, 529 So.2d at 1254-55. Specifically, Golden Pond asserts that because three previous wills have been discovered, the doctrine of dependent relative revocation would reinstate each will in the reverse order in which they were executed in the event the 2002 will or a prior will is declared invalid. Therefore, Golden Pond contends that the Wehrheims are unable to establish that they are interested persons entitled to contest the validity of the 2002 will or petition for removal of the personal representative.
The Wehrheims argue that the doctrine of dependent relative revocation does not apply and further assert that the revocation clause of the present will is valid and revokes the prior wills, thus requiring that intestacy proceedings be instituted, which would allow the Wehrheims to recover as beneficiaries of the decedent's intestate estate. Hence, in order to decide whether the Wehrheims have standing as interested persons, we must next determine *1007 whether the doctrine of dependent relative revocation applies to the instant case.

The Doctrine Of Dependent Relative Revocation
The doctrine of dependent relative revocation emanates from decisions rendered by English courts during the early part of the eighteenth century. Stewart v. Johnson, 142 Fla. 425, 194 So. 869 (1940). Like the English courts, American courts grappled with the difficult problem of revocation and revival of testamentary instruments to avoid intestacy. The doctrine gained initial currency in American decisions as a plausible legal theory to address this problem in certain circumstances by giving effect to a testator's failed attempt to devise his property as he desired by reviving a similar prior testamentary instrument, rather than have the property descend via the law of intestacy, where the decedent's wishes are supplanted by legislative dictates. In Stewart, the supreme court adopted the doctrine of dependent relative revocation and explained:
[S]tated simply it means that where testator makes a new will revoking a former valid one, and it later appears that the new one is invalid, the old will may be re-established on the ground that the revocation was dependent upon the validity of the new one, testator preferring the old will to intestacy.
Id. at 870.[5]
The doctrine creates a "rebuttable presumption that the testator would have preferred to revive his earlier ... bequests rather than let the property go by intestacy." In re Estate of Pratt, 88 So.2d 499, 501 (Fla.1956). This presumption is premised on the general notion that testacy is preferred by the courts over intestacy.[6] In essence, there are two confluent presumptions that form the basis of the doctrine: 1) the testator did not intend to die intestate, and 2) the testator intended that the revocation of the prior will is conditionally qualified on the validity of the subsequent will. In re Estate of Jones, 352 So.2d 1182 (Fla. 2d DCA 1977). *1008 "Stated another way: The testator prefers the prior disposition if the new one fails for any reason." Id. at 1185.
In order to determine whether these presumptions exist or whether they are rebutted, the court must confine its inquiry to the testamentary documents before it without resort to extrinsic evidence. Pratt; In re Estate of Barker, 448 So.2d 28 (Fla. 1st DCA 1984). Hence, in order to determine the testator's presumed intent, the courts in Florida consider whether the provisions of the present invalid will are sufficiently similar to the former will. See Stewart, 194 So. at 871-72 ("This testimony was undisputed and the language of the will indicated that deceased has incorporated passages from the 1937 will into the later one. The similarity between the two documents is sufficient to establish the relation of one to the other and they both incorporated a general scheme or plan of the testator to dispose of his estate."); Jones; In re Estate of Lubbe, 142 So.2d 130 (Fla. 2d DCA 1962), overruled on other grounds, In re Estate of Johnson, 359 So.2d 425 (Fla.1978). If the later revoked will is sufficiently similar to the prior will, then the courts can more easily indulge the presumption that the testator intended the revocation of the former will to be conditional on the validity of the later will and that the testator prefers the provisions of the former will over intestacy. This is the prevailing view in many other jurisdictions.[7]
The Wehrheims contend that the 2002 will is not sufficiently similar to the prior wills because the decedent had never before made a charitable devise of her estate. Hence, they assert the doctrine of dependent relative revocation is inapplicable to revive the decedent's prior wills. While the charitable devise may be a difference between the 2002 will and the prior wills, we discern a very significant similarity among all of the decedent's wills, which is her intention not to devise any portion of her estate to her children. Based on this similarity, we are unable to say that the presumed preference of the decedent for her prior dispositions and for testacy over intestacy has been rebutted. Therefore, our analysis so far leads us to conclude that the doctrine may apply to the instant case, but that conclusion does not end our inquiry. We must next determine whether the revocation clause is valid and revokes the prior wills thus rendering the doctrine inapplicable.

Partial Invalidity
The Wehrheims argue that only the testamentary portion of the will is invalid based on the undue influence exerted on the decedent and that the revocation clause is unaffected by the wrongdoing and, therefore, valid. Thus, they assert the revocation clause invalidates the prior wills thereby requiring intestacy proceedings which would allow them to share in the decedent's estate.
The Wehrheims base their argument on the provisions of section 732.5165, Florida Statutes (2003), which provides: "A will is void if the execution is procured by fraud, duress, mistake, or undue influence. Any part of the will is void if so procured, but the remainder of the will not so procured shall be valid if it is not invalid for other reasons."
*1009 A prior version of this statute found in section 731.08, Florida Statutes, which is virtually identical to section 723.5165, was applied by the court in In re Estate of Van Horne, 305 So.2d 46 (Fla. 3d DCA 1974), cert. denied, 320 So.2d 388 (Fla.1975), wherein the court explained by quoting section 366 of the Wills portion of American Jurisprudence:
"... the general rule is that parts of a will may be held valid notwithstanding other parts are invalid on account of undue influence exercised upon the testator, provided the parts so effected are separable so that the will remains intelligible in itself if the invalid parts are deleted upon probate.
* * * * * *
"The general rule as stated above is subject to the limitation that it is not applicable when it will defeat the manifest intent of the testator, interfere with the general scheme of distribution, or work an injustice to other heirs. The doctrine is not applicable where it is impossible to determine to what extent the specific legacies have been tainted by the undue influence; in such a situation the whole will must either be refused probate or admitted thereto. Moreover, the rule which permits the probate of part of a will notwithstanding other parts are declared invalid as affected by undue influence does not mean that a legatee may sustain his bequest on the ground that he did not participate in bringing undue influence to bear on the testator, where it appears that the entire instrument was the result of undue influence."
In re Estate of Van Horne, 305 So.2d at 49 (quoting 57 Am.Jur. Wills § 366); see also First Union Nat'l Bank of Fla., N.A. v. Estate of Mizell, 807 So.2d 78, 80 (Fla. 5th DCA 2001) ("We can envision a circumstance where undue influence may not prevent the operation of an express revocation clause since it is possible that the undue influence may be limited to particular aspects of a new will, not the decision to make a new will. Incapacity is another matter."); 79 Am.Jur.2d Wills § 372 (2004). We note that Golden Pond concedes in its brief that "this position is not inconceivable as a matter of law. . . ."[8]
We agree with the underlying premise of the Wehrheims' argument, which is that a valid revocation clause revoking a decedent's prior wills intended by the decedent to be unconditional on the validity of any subsequent will prevents application of the doctrine because both presumptions would be rebutted. See Stewart.[9] However, in order for the Wehrheims *1010 to prevail based on this particular argument, they will have to establish that the revocation clause was not invalidated by undue influence and that it was not intended by the decedent to be conditional on the validity of the testamentary provisions of the current will. While this may be a daunting task, the Wehrheims are nevertheless entitled to try to prove their case. Because the claim of undue influence raises factual issues, the trial court erred in entering summary judgment in favor of Golden Pond.
As to the claim of lack of testamentary capacity, we reiterate what we said in Estate of Mizell that "[i]ncapacity is another matter." Estate of Mizell, 807 So.2d at 80. The Wehrheims do not argue that the revocation clause is valid despite the alleged incapacity of the decedent to execute the 2002 will. Hence, the Wehrheims are not interested persons and therefore lack standing to seek revocation of probate of the 2002 will or removal of the personal representative based on their claim of lack of testamentary capacity of the decedent.

Conclusion
We conclude that the Wehrheims have standing as interested persons to petition for revocation of probate of the 2002 will and to seek removal of the personal representative based only on their claim of undue influence. Whether the alleged undue influence, if proven, is pervasive enough to permeate the entire will, including the revocation clause, and whether the decedent intended the revocation clause to be independent of, and unconditional on, the validity of the other provisions of the 2002 will are factual issues that must be determined by the trier of fact. Therefore, the summary judgment must be reversed and this case remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED for further proceedings.
PETERSON and MONACO, JJ., concur.
NOTES
[1] The Wehrheims assert in their initial brief that "Rebecca Fierle's line of work is elder care, consisting of acting as a professional guardian, geriatric care through use of power of attorney and health care surrogate instruments, and the probate of decedent's estate. She networks with people in the elder care business (nursing homes, assisted living facilities, etc.) and obtains referrals from contacts in the industry."
[2] The 1998 will did name one child as a contingent beneficiary.
[3] See Krivanek v. Take Back Tampa Political Comm., 625 So.2d 840 (Fla.1993), cert. denied, Clewis v. Krivanek, 511 U.S. 1030, 114 S.Ct. 1538, 128 L.Ed.2d 191 (1994); Schuster v. Blue Cross & Blue Shield of Fla., Inc., 843 So.2d 909 (Fla. 4th DCA), review dismissed, 852 So.2d 862 (Fla.2003); Carlton v. Carlton, 816 So.2d 254 (Fla. 2d DCA 2002).
[4] See also § 733.212(3), Fla. Stat. (2003) ("Any interested person on whom a copy of the notice of administration was served must object to the validity of the will, the qualifications of the personal representative, venue, or jurisdiction of the court by filing a petition or other pleading requesting relief in accordance with the Florida Probate Rules within 3 months after the date of service of a copy of the notice of administration on the objecting person, or those objections are forever barred.").
[5] See also Denson v. Fayson, 525 So.2d 432, 432 (Fla. 3d DCA 1988) ("The applicable doctrine of dependent relative revocation provides that, where a testator revokes a valid will by an act other than the making of a new will and intending that the revoked will be replaced by a new will, where the new will is thereafter found to be invalid the prior will may be re-established on the ground that the revocation was dependent on the validity of the latter will, and that the testator would have preferred the earlier will to intestacy.").
[6] The courts generally prefer any reasonable construction of a will to intestacy proceedings. See Elmore v. Elmore, 99 So.2d 265, 268 (Fla. 1957) ("Intestacy is not favored but a construction leading to a valid will is favored.") (citation omitted); In re Gregory's Estate, 70 So.2d 903 (Fla.1954) (recognizing that intestacy proceedings are not favored under Florida law); In re Smith, 49 So.2d 337, 339 (Fla.1950) ("It is said that the courts will prefer any reasonable construction, or any construction which does not do violence to the testator's language, to a construction which results in partial intestacy."); In re Estate of Barker, 448 So.2d 28, 31 (Fla. 1st DCA 1984) ("[T]he law favors any reasonable construction of a will that disposes of all of the testator's property over an interpretation that results in partial intestacy."); In re Estate of McGahee, 550 So.2d 83, 87 (Fla. 1st DCA 1989) ("[W]e are mindful that intestacies are not favored in the construction of wills."), review denied, 560 So.2d 232 (Fla. 1990); In re Estate of Baer, 446 So.2d 1128, 1128 (Fla. 4th DCA) ("[T]he law abhors intestacy."), review denied, 456 So.2d 1181 (Fla.1984); Dutcher v. Estate of Dutcher, 437 So.2d 788, 789 (Fla. 2d DCA 1983) ("Intestacy is not favored over a disposition under a will where construction of the will leads to a valid testamentary disposition.") (citations omitted); In re Estate of Gold, 189 So.2d 905, 906-07 (Fla. 3d DCA 1966) ("[I]n construing a will the terms of which would permit two constructions, one resulting in a valid testamentary disposition and the other in an intestacy, the latter is disfavored . . . .") (citations omitted).
[7] See, e.g., In re Heazle's Estate, 72 Idaho 307, 240 P.2d 821 (1952); Kroll v. Nehmer, 348 Md. 616, 705 A.2d 716 (1998); Watson v. Landvatter, 517 S.W.2d 117 (Mo.1974); Hauck v. Seright, 290 Mont. 309, 964 P.2d 749, 754 (1998) ("For the doctrine to apply, the new will must not have changed the testamentary purpose of the old will and must essentially repeat the same dispositive plans.").
[8] Golden Pond asserts, however, that this position is inconsistent with the Wehrheims' previous legal theory and that they did not properly move to amend to assert this as an alternative argument. We note that the Wehrheims did request leave to amend in their Objection and Motion to Strike Motion For Summary Judgment, which the trial court denied. Leave to amend should be liberally granted, especially when made prior to or at a hearing on a motion for summary judgment. See Ranger Constr. Indus., Inc. v. Martin Cos. of Daytona, Inc., 881 So.2d 677, 681 n. 2 (Fla. 5th DCA 2004); Old Republic Ins. Co. v. Wilson, 449 So.2d 421, 422 (Fla. 3d DCA 1984) ("Leave to amend should be freely given when justice so requires, Fla.R.Civ.P. 1.190(a), the more so when a party seeks such a privilege at or before a hearing on a motion for summary judgment.") (citation omitted).
[9] In Stewart v. Johnson, 142 Fla. 425, 194 So. 869 (1940), the court explained how the doctrine may not apply in such a situation by quoting section 483 of the Wills portion of Corpus Juris:

`The doctrine is not applicable where the act of destruction is not referrable, wholly and solely, to the intention of setting up some other testamentary paper as where it appears that the intention of the testator was to revoke totally and absolutely or where the testator at the time of the destruction of his will merely intends at some indefinite future time to make a new will. The fact that the latter will contains a clause expressly revoking former wills does not prevent the application of the doctrine, since it must be inferred that the testator intended to revoke former wills for the purpose of giving effect to the new disposition, and if, for want of proper execution of the subsequent will, its defective construction, or other sufficient cause, proper effect cannot be given to it, it is not to be supposed that the testator designed to die intestate, although the courts in some cases have refused to apply the doctrine where the declaration of revocation is contained in an instrument executed with all the formalities required by statute and is not made dependent upon the validity of a new gift amde [sic] in the same instrument or limited by language indicating an intention of the testator to preserve, in whole or in part, bequests embodied in the earlier instrument.'
Id. at 870-71 (Fla.1940) (quoting 68 C.J. Wills § 483); see also 95 C.J.S. Wills § 391 (2001).