DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MEREDITH FIEL** and **LISA FIEL,**
Appellants,

v.

**DOUGLAS F. HOFFMAN,** as Personal Representative of the Estate of Ben
H. Novack, Jr., **NARCY NOVACK, MARCHELO GAFFNEY, PATRICK
GAFFNEY, MAY AZALEH ABAD,** and **HARVEY E. MORSE, P.A.,**
Appellees.

No. 4D14-1048

[July 29, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit,
Broward County; Charles M. Greene, Judge; L.T. Case Nos. PR-C-09-
0003699 and PR-C-13-00004176.

Elliot B. Kula and W. Aaron Daniel of Kula & Associates, P.A., Miami,
and Peter A. Dyson of Metnick, Levy & Dyson, Delray Beach, for
appellants.

Gary L. Rudolf of Rudolf & Hoffman, P.A., Fort Lauderdale, for appellee
Douglas F. Hoffman.

William G. Crawford, Jr. of McDonald & Crawford, P.A., Fort
Lauderdale, for appellees Marchelo Gaffney, Patrick Gaffney and May
Abad.

WARNER, J.

In this appeal, we are asked to extend the Slayer Statute to bar the
children and grandchildren of the murderer from inheriting under the
decedent's will. The language of the Slayer Statute does not allow us to
make that extension. We therefore affirm the trial court's order dismissing
the appellants' complaint based upon the Slayer Statute, but we reverse
the dismissal of the count seeking to void the will based upon undue
influence.

This case arises from the probate of Ben Novack's estate. Ben was
murdered in 2009. The case became notorious when Ben's wife, Narcy,

was arrested and then convicted of Ben's murder. She also was responsible for the death of Ben's mother. She did all of this to assure that she and her family would obtain Ben's considerable fortune upon his death. Narcy had a daughter by another marriage, and the daughter had two sons. Both the daughter and her sons were named in Ben's will as beneficiaries if Ben's mother and Narcy did not survive Ben. Specifically, the will which was probated provided that if Ben's mother did not survive, Ben's estate would go to his wife Narcy. If neither his mother nor his wife survived him, then Narcy's daughter would receive $150,000, and the residue of the estate would be held in trust for Narcy's two grandsons.

After Narcy sought probate of the will, the court appointed appellee Douglas Hoffman as personal representative. Ultimately, the court determined that based upon section 732.802, Florida Statutes (2012), the Slayer Statute, Narcy was not entitled to participate in the estate, and the statute required the court to treat Narcy as having predeceased Ben. Therefore, her daughter and grandsons were the sole beneficiaries of the estate.

Ben's cousins Meredith and Lisa Fiel ("appellants") then filed a complaint and an amended complaint to invalidate the will currently under probate, as well as a prior will executed in October 2002, which devised the residue of Ben's estate to Narcy, or to Ben's mother if Narcy predeceased him. Appellants sought to enforce a will executed in June 2002, which devised the residue of Ben's estate to his mother if she survived him, and to appellants if his mother predeceased him. The complaint brought several claims, two of which are at issue in this appeal: (1) undue influence in the execution of the two wills devising the estate to Narcy and her descendants; and (2) under the Slayer Statute, Ben's stepdaughter and step-grandsons were barred from inheriting under Ben's will.

In the amended complaint, appellants alleged the following facts. Narcy had used physical violence against Ben to make him execute the two wills naming her and her family as beneficiaries. She also threatened to make public embarrassing personal matters of Ben's. Ben had sought a restraining order against Narcy, in which he alleged that she had made death threats to him. She used physical violence and death threats to benefit her, her daughter, and her grandchildren. Thus, appellants argued, the two wills were the product of undue influence. As to the Slayer Statute claim, appellants alleged that the court should prohibit Narcy's daughter and grandchildren from sharing in Ben's estate, because Narcy could benefit from the estate indirectly, as her daughter and grandchildren

2

could deposit money in her prison inmate account, thus thwarting the intent of the Slayer Statute.

The personal representative moved to dismiss the complaint and the amended complaint, and the court ultimately granted that relief. The court determined that, while the complaint alleged undue influence on the part of Narcy, it made no allegations that the daughter and grandsons participated in any way. The court found, "Where it is shown that one beneficiary procured a will by undue influence, the devises to the remaining beneficiaries who did not participate in the procurement remain valid." As to the Slayer Statute, the court determined that the Slayer Statute did not prohibit the children of the murderer from inheriting, ruling:

> Section 732.802 is clear and unambiguous and does not extend the prohibition of receipt of property or other benefits to anyone other than the killer of the decedent. It is not for the Court to legislate new laws or amendments to existing laws that are clear and unambiguous, that is exclusively a legislative process.

After appellants voluntarily dismissed the remaining counts of the complaint, the court entered a final order of dismissal, prompting this appeal.

Appellants argue that Florida's Slayer Statute should be interpreted to bar Narcy's daughter and grandsons from inheriting under Ben's will. The "slayer rule" first arose under the common law, from the concept "that no person should be permitted to benefit from his own wrong." *Carter v. Carter*, 88 So. 2d 153, 157 (Fla. 1956). In 1933, Florida enacted section 731.31, Florida Statutes, which provided:

> Any person convicted of the murder of a decedent shall not be entitled to inherit from the decedent or to take any portion of his estate as a legatee or devisee. The portion of the decedent's estate to which such murderer would otherwise be entitled shall pass to the persons entitled thereto as though such murderer had died during the lifetime of the decedent.

*Carter*, 88 So. 2d at 156.

Courts interpreted this statute as not barring inheritance in cases of, for example, a conviction for manslaughter. *Nable v. Godfrey's Estate*, 403 So. 2d 1038, 1040-41 (Fla. 5th DCA 1981). Disagreeing with this outcome,

3

the Legislature later expanded the statute by enacting section 732.802, Florida Statutes, which now provides:

> (1) A surviving person who unlawfully and intentionally kills or participates in procuring the death of the decedent is not entitled to any benefits under the will or under the Florida Probate Code, and the estate of the decedent passes as if the killer had predeceased the decedent. Property appointed by the will of the decedent to or for the benefit of the killer passes as if the killer had predeceased the decedent.

§ 732.802(1), Fla. Stat. (2013).

The Second District considered whether this provision barred inheritance by the slayer's heirs in *In re Estate of Benson*, 548 So. 2d 775 (Fla. 2d DCA 1989). In *Benson*, one of three siblings murdered his mother and one of his siblings. *Id.* at 776. The mother's will bequeathed her property to the three siblings; the murdered sibling died intestate, and the intestacy statute provided that the estate would pass to the slayer and the third sibling. *Id.* In rejecting the claim that the slayer's children should be barred from any inheritance, the Second District ruled:

> Appellant [the surviving, innocent sibling] . . . argues that the public policy of Florida requires that Florida's Slayer Statute should be extended to prevent [the slayer's] minor children from sharing in either [the mother's] or [the murdered sibling's] estates. . . .
>
> We have no difficulty in rejecting appellant's contention that there exists a public policy in Florida that would extend Florida's Slayer Statute so as to disinherit the natural and/or statutory heirs of a killer who except for his murderous act would have been a beneficiary of his victims' estates. We find the statutory language clear and unambiguous. If there is to be declared in Florida such a public policy as appellant urges, it must be accomplished by a legislative amendment to the Slayer Statute and not by a pronouncement of this court.
>
> . . .
>
> It is difficult to advance a credible argument as to any ambiguity in the statute or how the legislature could have more clearly spoken. It is the "surviving person *who . . . kills*" who is prohibited from benefiting from the act of killing

4

> (emphasis added). The statute clearly states without any exceptions that the property of the decedent "passes as if the killer had predeceased the decedent."
>
> . . .
>
> The trial judge therefore reached a correct result in determining that the minor children of [the slayer] inherit their father's share of the estates of [the deceased mother and sibling].

*Id.* at 777-78; *see also In re Estate of Fairweather*, 444 So. 2d 464, 465 (Fla. 2d DCA 1983) (rejecting appellants' argument that a conditional bequest in a will failed because "the 'statutory' death of the decedent's second wife [pursuant to the Slayer Statute] does not fulfill the condition precedent" in the decedent's will, reasoning: "the statute itself is clear").

The First and Third Districts have relied on *Benson* in construing the other subsections of the Slayer Statute dealing with life insurance benefits and joint tenancies. *See Chatman v. Currie,* 606 So. 2d 454, 456 (Fla. 1st DCA 1992) ("We hold as a matter of law that section 732.802 does not apply to an innocent contingent beneficiary's entitlement to life insurance benefits resulting from the killing of the primary beneficiary by the insured who then commits suicide."); *Lopez v. Rodriguez,* 574 So. 2d 249, 250 (Fla. 3d DCA 1991) ("We decline to hold that the legislature intended the statute to deprive an innocent beneficiary of the trust proceeds.").

We agree with our sister courts, as well as the trial court, that the statute is clear and unambiguous and disinherits only the slayer, or anyone who participates in the killing of the decedent, from any rights to the victim's estate. Appellants contend that *Benson* and its progeny all involved innocent family members related by blood, whereas here the daughter and grandchildren were related to the murderer and not to the decedent. *Benson,* however, did not turn on this factor. Rather, the *Benson* court relied on the plain language of the statute, which by its terms excludes only those who actively participate in procuring the death of the decedent.

Appellant also relies on several cases from other states which concluded that their Slayer Statutes precluded stepchildren from inheriting. *See Swain v. Estate of Tyre ex rel. Reilly,* 57 A.3d 283, 292-94 (R.I. 2012); *Heinzman v. Mason,* 694 N.E.2d 1164, 1167-68 (Ind. Ct. App. 1998); *In re Estate of Mueller,* 655 N.E.2d 1040 (Ill. App. Ct. 1995). We find them all distinguishable. Each dealt with Slayer Statutes whose

language is different from that of Florida and could be construed to bar the children of the slayer from inheriting.

For instance, the Rhode Island Act provides that "[n]either the slayer *nor any person claiming through him or her* shall in any way acquire any property or receive any benefit as the result of the death of the decedent, but the property shall pass as provided in this chapter." *Swain*, 57 A.3d at 291. In *Swain*, the court held that the Rhode Island statute precluded stepchildren of the deceased from inheriting from her, when their father was charged with her murder, and the children stated that they would use their inheritance to pay for their father's criminal defense. *Id.* at 293.

In Indiana, the statute imposed a constructive trust on any property a slayer might receive from the victim's estate, to be used for the benefit of persons legally entitled to the property, as though the slayer had predeceased the victim. *Heinzman*, 694 N.E.2d at 1166-67. In *Heinzman*, a murder/suicide, both parties died intestate; thus, the court did not deal with who may be "legally entitled" to the property under a will. *Id.* at 1166.

The Illinois statute in *Mueller* provided that a slayer should not receive "any property, *benefit*, or other interest by reason of the death, whether as heir, legatee, beneficiary . . . or *in any other capacity*. . . ." *Mueller*, 655 N.E.2d at 1043 (emphasis added). The court construed this language as prohibiting the slayer/wife's children from their share of her husband's estate, because the wife could receive a benefit in her capacity as guardian of her minor child. *Id.* at 1046. Those cases also present a much stronger case that the slayer would directly benefit from an inheritance by the slayer's children. In this case, it is sheer speculation that Narcy would obtain money from her daughter and grandchildren, as it appears from the record that relations between them are significantly strained.

The statute is clear. To interpret the statute to preclude the stepchildren from recovering would require us to add words to the statute, something we cannot do. If the Legislature deems as a public policy matter that anyone inheriting through the slayer should be barred from receiving any share of a victim's estate, it can amend the statute to accomplish that result.

In their second issue on appeal, appellants argue that, although they have not alleged that the stepdaughter and step-grandsons participated in unduly influencing Ben's will, their complaint stated a cause of action for revocation of the wills based on undue influence, because they alleged that the entire will was tainted by Narcy's actions, and the bequests in favor of

the stepdaughter and step-grandsons cannot be severed. We agree that the complaint stated a cause of action.

Section 732.5165, Florida Statutes (2013) provides:

> A will is void if the execution is procured by fraud, duress, mistake, or undue influence. Any part of the will is void if so procured, but the remainder of the will not so procured shall be valid if it is not invalid for other reasons. . . .

In applying this statute to the present case, the trial court relied on *In re Kiggins' Estate*, 67 So. 2d 915 (Fla. 1953). There, our supreme court dealt with a materially identical version of section 732.5165, Florida Statutes. A decedent executed a will leaving the bulk of her property to a Mrs. Peterson and Myrtle Kirch, with Mrs. Peterson's husband as executor. The decedent's husband challenged the will. The circuit court found competent evidence that Myrtle Kirch had exercised undue influence but that no evidence supported any undue influence by the Petersons. "[T]here [was] no evidence whatever in the record to show that [the Petersons] at any time were guilty of any misconduct toward the deceased." *Id.* at 918. The supreme court therefore affirmed the lower court's ruling that the will was valid as to the innocent beneficiaries. No facts appear in the opinion as to the type of undue influence alleged.

Appellants argue that *Kiggins* is distinguishable, because they claim that the entire will was the result of undue influence. They rely on the following language from *In re Van Horne's Estate*, 305 So. 2d 46 (Fla. 3d DCA 1974):

> The general rule as stated above is subject to the limitation that it is not applicable when it will defeat the manifest intent of the testator, interfere with the general scheme of distribution, or work an injustice to other heirs. *The doctrine is not applicable where it is impossible to determine to what extent the specific legacies have been tainted by the undue influence; in such a situation the whole will must either be refused probate or admitted thereto.* Moreover, the rule which permits the probate of part of a will notwithstanding other parts are declared invalid as affected by undue influence does not mean that a legatee may sustain his bequest on the ground that he did not participate in bringing undue influence to bear on the testator, *where it appears that the entire instrument was the result of undue influence.*

*Id.* at 49 (quoting 57 Am. Jur. Wills s. 366) (emphasis added). In *Van Horne*, the trial court struck a bequest to the deceased's guardian on the basis of undue influence, because the trial court found he had improperly participated in the preparation of the will. *Id.* at 48. However, the court allowed a bequest to the deceased's nephew to stand, and another beneficiary appealed this holding. *Id.* The Third District affirmed the decision, finding:

> [T]here is nothing in this record to show a connection between [the guardian] and [the nephew]. The record establishes that [the nephew] is a nephew and a natural recipient of the testatrix's bounty. The trial judge has found that [the guardian] over-stepped the bounds of propriety by attaching his own name as beneficiary of the estate. We know of no reason that this finding should destroy the legal effect of the codicil as to the remaining beneficiary, and we believe that the decision here reached is in accord with *In re Kiggins' Estate* . . . .

*Id.* at 49. Thus, *Van Horne* did not apply the exception to the rule that provisions unduly influenced may be severed from the remainder of the will.

The Fifth District did apply the exception from *Van Horne* in *Wehrheim v. Golden Pond Assisted Living Facility*, 905 So. 2d 1002 (Fla. 5th DCA 2005). There, the decedent executed a will revoking her prior wills and leaving her estate to the assisted living facility where she died. *Id.* at 1004-05. The decedent's children argued that the bequest to the facility was invalid, as a result of undue influence, but that the revocation clause was severable and survived, meaning they should inherit under the intestacy statute. *Id.* at 1008. Citing the above-quoted language from *Van Horne*, the Fifth District reversed the trial court's order granting summary judgment against the decedent's children, holding:

> [I]n order for the [the children] to prevail based on this particular argument [that the revocation clause was severable and valid], they will have to establish that the revocation clause was not invalidated by undue influence. . . Because the claim of undue influence raises factual issues, the trial court erred in entering summary judgment in favor of Golden Pond.
>
> . . .

Whether the alleged undue influence, if proven, is pervasive enough to permeate the entire will, including the revocation clause, and whether the decedent intended the revocation clause to be independent of, and unconditional on, the validity of the other provisions of the 2002 will are factual issues that must be determined by the trier of fact.

*Id.* at 1009-10.

We think the *Van Horne* exception applies to the allegations of undue influence in appellants' complaint. Appellants alleged that Narcy used "undue influence through duress, threats, physical attacks, home invasions and extortions" to "cause[] Ben Novack to sign two wills which completely altered Ben Novack's intended estate plan." They alleged that the contested wills "were entirely tainted due to the degree of undue influence caused by Narcy Novack"; "in totality [were] the product of undue influence"; and were "void because of undue influence of Narcy Novack." Appellants also alleged "The provisions for [the stepdaughter and step-grandsons] have been tainted by the undue influence." These allegations are sufficient to survive a motion to dismiss because they allege that the undue influence tainted the entire will, including the bequests to the stepdaughter and step-grandsons.

This case is not unlike *Sun Bank/Miami, N.A. v. Hogarth*, 536 So. 2d 263 (Fla. 3d DCA 1988). There, the trial court set aside two wills on the grounds that they were the product of undue influence by Robert Grayson. *Id.* at 265. Grayson and his sister were named beneficiaries under these wills. *Id.* On appeal, the sister argued that the bequest to her should not be invalidated based on the actions of her brother. *Id.* at 267. The Third District disagreed and affirmed the trial court's decision to entirely invalidate both wills, distinguishing *Kiggins*:

Even if the trial court had not totally invalidated these instruments, this is not a case in which there was no relationship between the party exercising the undue influence and the other beneficiary of the influenced instrument. *In Re Kiggins' Estate*, 67 So. 2d 915 (Fla. 1953); *In Re Van Horne's Estate*, 305 So. 2d 46 (Fla. 3d DCA 1974), *cert. denied*, 320 So.2d 388 (Fla.1975). *The evidence indicates that Grayson's actions were undertaken not only to benefit himself, but also to benefit [his sister].*

9

*Id.* at 267 (emphasis added).  Similarly, the complaint in this case alleges that the actions of Narcy were taken not only to benefit herself but also her family.  As such, the complaint states a cause of action.

We thus affirm the court's dismissal of the complaint based upon the Slayer Statute but reverse the dismissal of the count for revocation of the wills based upon undue influence.  We remand for further proceedings.

LEVINE and CONNER, JJ., concur.

*      *      *

***Not final until disposition of timely filed motion for rehearing.***